IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| CHRISTOPHER STOVALL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | CASE NO. 1:04-cv-659-F |
| | ) | (WO) |
| CLARK ALLUMS, both in his individual | ) | |
| capacity and his official capacity | ) | |
| as a Dothan Police Officer, *et al.,* | ) | |
| | ) | |
| Defendants | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Christopher Stovall (hereinafter "Stovall") brings this civil rights action against Defendants City of Dothan and Officer Clark Allums alleging violations of his constitutional rights secured by the First and Fourth Amendments of the United States Constitution. (Doc. # 9, Am. Compl.)  Plaintiff brings these constitutional claims under 42 U.S.C. § 1983 (hereinafter "Section 1983") based upon an unlawful arrest.  Plaintiff also brings state law claims of malicious prosecution, false imprisonment and negligent, wanton or willful hiring, training and supervision against Defendants.

This cause is before the court on the Defendants' separate Motions for Summary Judgment filed on May 11, 2005.  (Docs. # 28 & 30.)  Plaintiff filed a response in opposition to the motions on June 3, 2005 (Doc. # 56), and Defendants filed a reply thereto on June 10, 2005 (Docs. # 60 & 61).  For the reasons to be discussed, the court finds that the motion for summary judgment filed by Officer Clark Allums is due to be DENIED; and the motion for summary judgment filed by the City of Dothan is due to be GRANTED in part and DENIED

in part.

## I. FACTS AND PROCEDURAL HISTORY

This lawsuit stems from a father and son outing at a basketball tournament in Dothan, Alabama. Although the parties' versions of the incident differ drastically, the summary judgment posture of this case requires this Court to consider the submissions of the parties in the light most favorable to the non-moving party: the plaintiff.[1] As such, the materials presented by the parties, viewed in the light most favorable to Stovall, establish the following facts:

On the evening of December 30, 2003, Stovall[2] and his young son, Keyon, were standing in line, on the second floor of the Dothan Civic Center (hereinafter "Center"), waiting to purchase tickets for a high school basketball tournament.[3] A large crowd of individuals, approximately 100 to 150 people, were gathered in line to purchase tickets. Officer Clark Allums (hereinafter "Officer Allums"), a police officer for the City of Dothan, was clothed in his uniform and was working as security for the basketball tournament.[4] After a few individuals began to break the line, Ray Dyck (hereinafter "Dyck"), who was waiting in line behind Stovall, saw Officer Allums and asked him to stop people from breaking the

---

[1] *See, e.g., Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996).

[2] Stovall is an African-American male.

[3] Stovall has attended this annual tournament with his son since 1999.

[4] Officer Allums was off-duty as a police officer at all relevant times; however, he was carrying his police-issued weapon, radio and handcuffs.

line.  In response to Dyck's request, Officer Allums stated, in a loud and rude tone, that 2000 thousand tickets would be sold and he was not on duty to form lines.[5]  Officer Allums then proceeded to walk away.

As Officer Allums walked away, Stovall stated to Dyck, "he [referring to Officer Alllums] didn't have to get so smart with you.  Ray, don't worry about it.  He didn't have to be ugly to you."[6]  Upon hearing Stovall's statements to Dyck, Officer Allums reversed direction and proceeded to approach Stovall.  Officer Allums angrily walked up to Stovall and  confronted him at close range about his comments.  Officer Allums approached Stovall nose-to-nose in a threatening manner, grabbed his arm and began shouting at him.  Because Officer Allums was literally in his face, Stovall calmly asked Officer Allums for "some personal space" and requested that they talk about the situation like gentlemen.[7]  Officer Allums continued to closely approach Stovall, causing him to back into the crowd, and retorted to him that he "don't get no personal space."   Officer Allums shouted some additional comments to Stovall, then reached for his radio and requested backup.  Within a few minutes,[8] several uniformed police officers arrived on the scene, running with their hands on their weapons.  Officer Allums ordered Stovall to go down to the first level of the

---

[5] Officer Allums argues that Dyck confronted him repeatedly about people breaking in line and that, after surveying the line, he observed no one breaking in line.

[6] (Stovall Dep. 30, 32.)

[7] (*Id*. at 35-36.)

[8] The Dothan Police Department is directly across the street from the Center so it only took a few minutes for the police officers to travel from the police department to the Center.

Center.[9]  Stovall asked Officer Allums "why" and Officer Allums responded that it would be in his best interest to go downstairs.[10]  Stovall quickly seized his son's hand and walked down to the first floor of the Center.

On the first floor of the Center, Stovall and his son were ordered by the police officers to leave the building.  Stovall complied with the request of the police officers and was escorted outside the building.  Officer Allums told Stovall that he was going to let him back in, but he was trying to embarrass Officer Allums and make him look bad in front of all those folks.[11]  Corporal Heath Carpenter (hereinafter "Corporal Carpenter"), one of the police officers which arrived on the scene for backup, placed Stovall in handcuffs.[12]  Although Stovall asked the police officers why he was being arrested, no officers responded to his inquiry.[13]

---

[9] (*Id*. at 37.)  According to Stovall, Officer Allums placed his face close to Stovall's face and asked him what did he have to say.  (*Id*. at 35.)  Officer Alllums also grabbed Stovall by his arm, and asked him if "[he] want[ed] to be bad" and "if [he] wanted to be smart."  (*Id*. at 35, 37.)

[10] (*Id*. at 36, 39.)

[11] (*Id*. at 38.)

[12] After purchasing two tickets for Stovall and his son, Dyck came down to the first level of the Center and attempted to go outside to give Stovall the tickets.  When Dyck approached the door to depart outside, a police officer met him at the door and warned him that if he came outside, he would be arrested.  Seeing Stovall in handcuffs, Dyck took heed of the police officer's warning and returned to the second level of the Center for the tournament.

[13] Defendants vigorously contest Stovall's version of the events.  According to the affidavits and deposition testimony of Officer Allums, Corporal Carpenter and several other police officers, Stovall was loud, argumentative and refused to obey their orders.  Officer Allums contends that the incident began by Stovall yelling loudly to him, not Dyck, that he didn't have to be rude or ugly to Dyck.  Officer Allums responded by gesturing to Stovall in such a way as to tell him, "That is enough."  Stovall loudly replied to Officer Allums that he did not have to be so rude.  Officer

Stovall was transported to the jail and charged with disorderly conduct.[14]   Shortly thereafter, Stovall was released on bond.[15]  After being released, Stovall retrieved his son and returned to the Center.  At the Center, Stovall approached Officer Allums and requested his permission to attend the basketball tournament.  Officer Allums gave Stovall his permission.  Stovall purchased two tickets, and he and his son watched the basketball tournament without further incident.

Stovall was subsequently tried on the charge of disorderly conduct in Dothan Municipal Court on June 29, 2004.  After a bench trial during which the court heard testimony from Stovall, Officer Allums, Corporal Carpenter, Dyck and several other witnesses to the incident,[16] the court found Stovall not guilty.

On July 6, 2004, Stovall filed the instant action naming the City of Dothan and

---

Allums thus walked over to Stovall to discuss his concerns.  Stovall became agitated and loudly told Officer Allums to get out of his face or space.  Although Officer Allums directed him to calm down, Stovall refused and continued to yell at Officer Alllums.  Officer Allums told Stovall to step out of line and go downstairs, and Stovall repeatedly refused.  After Stovall refused for the third time, Officer Allums called for back up on his radio.  After the other police officers arrived, Stovall stepped out of line and acted as if he would leave the area.  Notwithstanding, Stovall repeatedly refused to leave so Officer Allums and Corporal Carpenter escorted him down to the first floor.  After reaching the first floor, Stovall continued to refuse to leave the Center.  Due to his refusal, Officer Allums placed him under arrest for disorderly conduct.

[14] Kindly enough, Stovall was not transported to the jail until after his brother arrived to care for his son.

[15] According to Stovall, he was at the jail an hour or two and was never placed in a cell.  However, evidence submitted by Defendants indicate that Stovall was only at the jail approximately 40 minutes.  (*See* Grubbs Aff.)

[16] Eddie Jones, Dan McKnight, and Denny McKinnon were in the ticket line behind Stovall and are the other witnesses to the incident.

Allums, in his individual and official capacity[17] as a Dothan Police Officer, as defendants.[18] In the Complaint, Stovall alleges four counts against Defendants. In the first count, Stovall claims that Defendants are liable for damages under Section 1983 for violating his constitutional rights under the First and Fourth Amendments.[19] In the second count, Stovall alleges a state law claim of malicious prosecution against Defendants.[20] In the third count, Stovall alleges a state law claim of negligent, wanton and/or willful hiring, training and supervision against the City of Dothan.[21] In the fourth count, Stovall alleges a state law claim of false imprisonment against Defendants.[22] Stovall requests a jury trial and seeks the following relief: equitable relief, attorney fees, court costs, and damages.[23]

---

[17] In the pretrial hearing held before the undersigned, Stovall abandoned his claims alleged against Officer Allums in his official capacity. This abandonment is consistent with his previous concession stated in his response to the motion dismiss filed by Officer Allums. (Doc. # 8, Pl.'s Resp. 2) ("The Plaintiff agrees that any and all claims levied against Allums in his official capacity, are indeed, actually claims against the City of Dothan. . . . [i]f this Honorable Court deems that a formal dismissal of Allums in his official capacity is necessary for purposes of judicial economy or clarity of the issues, the Plaintiff does not stand opposed."). Accordingly, these claims are due to be dismissed.

[18] (Doc. # 1, Compl.)

[19] Initially, Stovall alleged violations of his constitutional rights under the First, Eighth, Ninth, and Fourteenth Amendments. (Doc. # 1, Compl. ¶¶ 18 & 19.) Stovall, however, has abandoned his constitutional claims under the Eighth and Ninth Amendments, and added a claim under the Fourth Amendment. (*See* Doc. # 9, First Am. Compl.) Hence, only Stovall's claims under the First and Fourth Amendments remain in this lawsuit. (*Id*. at ¶ 18.)

[20] (Doc. # 9, First Am. Compl. 4-5.)

[21] (*Id*. at 5.)

[22] (*Id*. at 5-6.)

[23] (*Id*. at 6.)

## II.  JURISDICTION AND VENUE

The court exercises subject matter jurisdiction over this action pursuant to  28 U.S.C. §§ 1331, 1343(4) and 1367.  The parties do not contest personal jurisdiction or venue, and the Court finds adequate allegations in support of both personal jurisdiction and venue.

## III.  STANDARD OF REVIEW

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  "An issue of fact is 'genuine' if the record as a whole could lead a reasonable trier of fact to find for the nonmoving party.  An issue is 'material' if it might affect the outcome of the case under the governing law."  *Redwing Carriers, Inc. v. Saraland Apartments,* 94 F.3d 1489, 1496 (11th Cir. 1996) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)).

The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex,* 477 U.S. at 323.  The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing the non-moving party has failed to present evidence in support of some element of its case on which it bears the ultimate

7

burden of proof. *Id.* at 322-23.

Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324. To avoid summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). On the other hand, a court ruling on a motion for summary judgment must believe the evidence of the non-movant and must draw all justifiable inferences from the evidence in the non-moving party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 255. After the nonmoving party has responded to the motion for summary judgment, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c).

## IV. DISCUSSION

Defendants argue that summary judgment is appropriate in this case for several reasons. Officer Allums argues that summary judgment should be entered in his favor because he is entitled to qualified immunity on Stovall's Section 1983 claims and he is entitled to discretionary function or state-agent immunity under Alabama law on Stovall's state law claims. The City of Dothan argues that Stovall's Section 1983 claims are subject to summary judgment because he has failed to establish a constitutional violation and failed to establish that his alleged injury was a result of a policy or custom of the City of Dothan.

8

The City of Dothan also argues that Stovall's state law claims fail due to immunity under Alabama law.  The Court reviews each issue in turn.

*A.    Constitutional Claims Against Officer Allums*

Pursuant to Section 1983, Stovall claims that Officer Allums violated his Fourth Amendment and First Amendment rights by unlawfully arresting him without probable cause.[24]  Officer Allums argues that he is entitled to summary judgment on both claims because of qualified immunity.

At the outset, the Court notes that Stovall's First and Fourth Amendment claims are inextricably intertwined.  The Eleventh Circuit has explained that when a police officer has probable cause to believe that a person is committing a particular public offense, the officer may lawfully arrest that person, even though the offender is engaged in protected First Amendment activity.  *Redd v. City of Enterprise*, 140 F.3d 1378, 1383 (11th Cir. 1998); *see also Dahl v. Holley*, 312 F3.d 1228, 1236 (11th Cir. 2002) ("[T]he existence of probable cause to arrest [the plaintiff] defeats her First Amendment claim.").  As a result of this holding, Stovall's First Amendment claim hinges on the legality of his arrest under the Fourth Amendment.  Therefore, the Court will initially address whether Officer Allums is entitled to qualified immunity for his arrest of Stovall on the date in question.  If Officer Allums is entitled to qualified immunity for the arrest, then Stovall's First Amendment claim must fail.

---

[24] Section 1983 provides judicial remedies to a claimant who can prove that a person acting under color of state law committed an act that deprived the claimant of some right, privilege, or immunity protected by the Constitution or laws of the United States. 42 U.S.C. § 1983.  In this case, it is undisputed that at all relevant times Officer Allums was acting under color of state law.

*Redd*, 140 F.3d at 1386 ("[W]hen an officer has *arguable* probable cause to believe that a person is committing a particular public offense, he is entitled to qualified immunity from suit, even if the offender may be speaking at the time he is arrested.").  However, if qualified immunity is not warranted for Stovall's Fourth Amendment claim, only then will the Court address whether the arrest violated Stovall's First Amendment rights.

      1.    *General Principles of Qualified Immunity*

      "Qualified immunity offers complete protection for government officials sued in their individual capacities if their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  "The purpose of this immunity is to allow government officials to carry out their discretionary duties without fear of personal liability or harassing litigation, protecting from suit all but the plainly incompetent or one who is knowingly violating the federal law." *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002) (internal quotation marks and citations omitted).  *See also Wood v. Kesler*, 323 F.3d 872 (11th Cir. 2003).

      To receive qualified immunity, "the public official must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful actions occurred." *Id.* (internal quotation marks omitted).   In the instant case, the parties have not contested that Officer Allums was acting in his discretionary capacity when he arrested Stovall.  "Once the defendant establishes that he was acting within his discretionary authority, the burden shifts to the plaintiff to show that qualified immunity is not

appropriate." *Id*.

The United States Supreme Court has set forth a two-part test in order to determine whether a public official is entitled to qualified immunity.  The court must ask first the following threshold inquiry: "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Brosseau v. Haugen,* __ U.S. __, 125 S. Ct. 596, 598 (2004) (quoting *Saucier,* 533 U.S. 194, 201 (2001)).  "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." *Saucier*, 533 U.S. at 201.  However, "[i]f a constitutional right would have been violated under the plaintiff's version of the facts, 'the next, sequential step is to ask whether the right was clearly established.'" *Vinyard*, 311 F.3d at 1346 (quoting *Saucier,* 533 U.S. at 201). Employing the above analytical framework, the Court will determine whether Officer Allums is entitled to summary judgment on the basis of qualified immunity.

    2.   *Fourth Amendment Claim*

Stovall claims that Officer Allums violated his constitutional rights under the Fourth Amendment by unlawfully arresting him without probable cause.  The Fourth Amendment's guarantee against unreasonable searches and seizures encompasses the right to be free from arrest without probable cause. *See Crosby v. Monroe County,* 394 F.3d 1328, 1332 (11th Cir. 2004) (citing *Von Stein v. Brescher,* 904 F.2d 572, 579 (11th Cir. 1990)).  "Probable cause is 'defined in terms of facts and circumstances sufficient to warrant a prudent man in believing that the suspect had committed or was committing an offense.'" *Id.* at 1332

11

(quoting *Gerstein v. Pugh,* 420 U.S. 103, 111 (1975)) (internal marks and citations omitted).

The issue here, however, is not whether probable cause existed but instead whether there was arguable probable cause. Qualified immunity applies when there was arguable probable cause for an arrest even if actual probable cause did not exist. *Jones v. Cannon,* 174 F.3d 1271, 1283 n. 3 (11th Cir. 1999) ("Arguable probable cause, not the higher standard of actual probable cause, governs the qualified immunity inquiry."). Hence, "[i]n the context of a wrongful arrest claim, an officer will be protected by qualified immunity if he had arguable probable cause to effectuate the arrest." *Brown v. Head*, 228 F. Supp. 2d 1324, 1328 (M.D. Ala. 2002) (internal quotations and citation omitted).

Arguable probable cause exists if, under all of the facts and circumstances, an officer reasonably could – not necessarily would – have believed that probable cause was present. *Durruthy v. Pastor,* 351 F.3d 1080, 1089 (11th Cir. 2003) ("Arguable probable cause exists when an officer reasonably could have believed that probable cause existed, in light of the information the officer possessed.") (internal marks and citation omitted); *Montoute v. Carr,* 114 F.3d 181, 184 (11th Cir. 1997) ("In order to be entitled to qualified immunity from a Fourth Amendment claim, an officer need not have actual probable cause but only 'arguable probable cause,' i.e., the facts and circumstances must be such that the officer reasonably could have believed that probable cause existed."); *Brown*, 228 F. Supp. 2d at 1328 ("Arguable probable cause exists when reasonable police officers, in the same circumstances and possessing the same knowledge as the Defendant, could have believed that there was probable cause to make a warrantless arrest.") (citation omitted). This inquiry is objective

as the court must ask whether the officer's actions were objectively reasonable regardless of the officer's underlying motivation or intent.  *Montoute*, 114 F.3d at 183.

Because this case is before the Court on Officer Allums' motion for summary judgment the Court is required to resolve all issues of material fact in favor of Stovall and then answer the legal question of whether Officer Allums is entitled to qualified immunity under that version of the facts.  *Brown*, 228 F. Supp. 2d at 1328.  Viewing the factual submissions of the parties in a light most favorable to Stovall, the central inquiry under the first step of the qualified immunity analysis is whether Officer Allums had arguable probable cause to arrest Stovall on the evening of December 30, 2003.

Under Stovall's version of the facts, Officer Allums did not have arguable probable cause to arrest Stovall for disorderly conduct as that crime is defined under Alabama law.[25] According to Stovall's evidence, at the time Officer Allums placed Stovall under arrest,

---

[25]    *Alabama Code* § 13A-11-7 defines disorderly conduct as follows:

(a)  A person commits the crime of disorderly conduct if, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he:
(1)  Engages in fighting or in violent tumultuous or threatening behavior; or
(2)  Makes unreasonable noise; or
(3)  In a public place uses abusive or obscene language or makes an obscene gesture; or
(4)  Without lawful authority, disturbs any lawful assembly or meeting of persons; or
(5)  Obstructs vehicular or pedestrian traffic, or a transportation facility; or
(6)  Congregates with other person in a public place and refuses to comply with a lawful order of the police to disperse.

*Ala. Code* § 13A-11-7 (1975).  Stovall was charged with violating (6) of the disorderly conduct statute.

Stovall had not done anything that would give a reasonable officer the impression that he was violating, had violated, or was about to violate the disorderly conduct statute so as to justify a warrantless arrest.[26]   Stovall simply made a comment to Dyck and was physically confronted by Officer Allums for doing so.  Stovall did not shout at Officer Allums and was not loud towards Officer Allums; rather, he was calm.[27]  Additionally, Stovall – and four other witnesses – deny that Stovall was rude to Officer Allums or refused to comply with his orders.  In other words, based upon the evidence he submitted to the Court, at no time did Stovall refuse to comply with an order by a police officer to disperse.[28]  Because the Court must credit Stovall's testimony at this stage of the litigation, it concludes that Officer Allums did not have arguable probable cause to arrest Stovall for disorderly conduct.  *See Brown*, 228 F. Supp. 2d at 1329-1330.  *Also Webb v. Ethridge*, 849 F.2d 546, 549-50 (11th Cir. 1988)

---

[26]  Disorderly conduct is a misdemeanor offense in Alabama, thus a law enforcement officer may not make a warrantless arrest for that offense unless the unlawful acts are committed in the officer's presence.  *Ala. Code* § 15-10-3 (1975); *Ala. R. Crim. P.*  4.1(a).

[27]  Further, there is no evidence that Stovall behaved violently, made unreasonable noise, used obscene language, or disturbed a lawful assembly.  *See Ala. Code*  § 13A-11-7.

[28]  Officer Allums contests Stovall's version of the events and has produced evidence that contradicts it.  Notwithstanding this evidence, the timing of this contention is misplaced as it is more appropriately directed toward the factfinder at trial, not upon a motion for summary judgment.  As stated by this court in *Brown*,

> When confronted with a motion for summary judgment, district courts cannot engage in credibility determinations and the weighing of evidence, . . .yet this is exactly what the Defendant asks this court to do.  Put simply, the procedural posture of this case prohibits the court from disregarding the Plaintiff's affidavit and deposition testimony in favor of evidence that the Defendant considers to be the more reliable.

228 F. Supp. 2d at 1329 (citation omitted).

(stating that in the context of an unlawful arrest case where the plaintiff and officers submit conflicting affidavits as to the facts surrounding the arrest, the court must credit the plaintiff's version as truthful when the officers move for summary judgment on qualified immunity grounds).

Viewing the facts in a light most favorable to Stovall, Officer Allums did not have arguable probable cause to arrest Stovall without a warrant on December 23, 2003. Stovall's affidavit and deposition testimony reveal that he did not make any abusive remarks or engage in threatening behavior. Although Officer Allums has produced evidence to the contrary, this Court would be exceeding its authority if it rendered a decision at this stage of the litigation on the credibility and veracity of Stovall's evidence. Because Stovall has established a violation of his Fourth Amendment rights, based on his version of the facts, the Court will now move to the second step of the qualified immunity inquiry: whether the right to be free from a warrantless arrest in the absence of probable cause is "clearly established."

In *Hope v. Pelzer*, 536 U.S. 730 (2002), the Supreme Court modified the Eleventh Circuit's qualified immunity standard with respect to what constitutes a "clearly established" right. According to the Court, "[f]or a constitutional right to be clearly established, its contours must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id*. at 739. Even in novel factual circumstances when a particular type of conduct has not been specifically adjudicated as unlawful, the Court emphasized that public officials may be on notice that their conduct violates clearly established law if the unlawfulness of the action is apparent in light of pre-existing law. *See*

15

*id.* at 739. "The [unlawfulness of the action] is clearly established if the 'preexisting law dictates, that is, truly compel[s],' the conclusion for all reasonable, similarly situated public officials that what Defendant was doing violated Plaintiffs' federal rights in the circumstances." *Evans v. Stephens,* 407 F.3d 1272, 1282 (11th Cir. 2005) (quoting *Marsh v. Butler County,* 268 F.3d 1014, 1031 (11th Cir. 2001) (en banc)). *See also Groh v. Ramirez,* 540 U.S. 551, 563 (2004) (noting that qualified immunity shields public officers from liability so long as the transgressed right, given the circumstances, was not already clearly established, "that is 'whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted' ") (citation omitted).

In this case, there can be no question that an arrest without probable cause to believe a crime has been committed violates the Fourth Amendment. *E.g., Von Stein v. Brescher*, 904 F.2d 572, 579 (11th Cir. 1990). Indeed, the Eleventh Circuit has repeatedly held that this legal tenant is "clearly established" for purposes of addressing qualified immunity claims by public officials. *E.g., Id.*; *Herren v. Bowyer*, 850 F.2d 1543, 1547 (11th Cir. 1988). *See also Brown,* 228 F. Supp. 2d at 1331; *Babers v. City of Tallasee,* 152 F. Supp.2d 1298, 1304 (M.D. Ala. 2001). Given this clarity in the law[29] and the firmly entrenched nature of the right to be free from a warrantless arrest absent probable cause, the Court holds that under Stovall's version of the facts there was no arguable probable cause for his arrest and, in light

---

[29] When case law is needed, only cases from the Supreme Court, Eleventh Circuit or the highest court of the pertinent state clearly establish the law in this Circuit for qualified immunity analysis. *Marsh,* 268 F.3d at 1033 n. 10.

of pre-existing law, it would be clear to a reasonable officer that Officer Allums' conduct in arresting Stovall was unlawful.

In sum, the law is "clearly established" that an arrest without a warrant or probable cause to believe a crime has been committed violates the Fourth Amendment, and a reasonable police officer would not have believed, on Stovall's version of the facts, that the arrest in this case was lawful. [30] In light of this conclusion, as well as the numerous factual disputes in this case,[31] summary judgment in favor of Officer Allums is not appropriate on Stovall's Fourth Amendment claim.

---

[30] The evidence presented by Stovall would not give a reasonable officer any indication that his actions even remotely approached the disorderly conduct level. Even assuming that Stovall protested Officer Allums' order to go down to the first level of the Center, the Supreme Court has recognized that this type of conduct is lawful. *See City of Houston v. Hill*, 482 U.S. 451, 461 (1987) (stating that "the First Amendment protects a significant amount of verbal criticism and challenge directed at police officers"); *Norwell v. City of Cincinnati*, 414 U.S. 14, 16 (1973) (per curiam) ("Surely, one is not to be punished for nonprovocatively voicing his objection to what he obviously felt was a highly questionable detention by a police officer."). Accordingly, looking at the evidence in the light most favorable to Stovall, his conduct was entirely lawful.

[31] The Court disagrees with Officer Allums' contention that Stovall has not produced sufficient evidence to create a "genuine issue of material fact." An issue is "genuine" for summary judgment purposes "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson,* 477 U.S. at 248. This Court's function is not "to weigh the evidence and determine the truth of the matter" but to determine whether a "fair-minded jury (or factfinder) could return a verdict for the plaintiff on the evidence presented." *Id.* at 249. In this case, Stovall has met this burden because a reasonable factfinder could choose to believe the content of his testimony instead of Officer Allums' contrary evidence. Furthermore, Stovall's evidence is unquestionably "material" as his statements directly contest the factual accuracy of the events surrounding his arrest. Indeed, this evidence will almost certainly effect the outcome of the litigation. *See id.* at 248. Even though Offiver Allums vigorously disputes Stovall's version of events, Stovall has satisfied his burden at the summary judgment stage by bringing forth affirmative evidence to create a genuine issue of material fact for trial.

17

3.    *First Amendment Claim*

Stovall alleges that Officer Allums violated his constitutional rights under the First Amendment by unlawfully arresting him when he attempted to have a conversation with another individual waiting in line for the basketball tournament.[32]  Stovall argues that, since Officer Allums did not have probable cause to make the arrest, commonsense dictates that he was arrested for his comment to Dyck regarding the ugliness of Officer Allums' actions.

Having made the determination that Officer Allums is not entitled to qualified immunity in relation to Stovall's Fourth Amendment claim, Officer Allums is not entitled to summary judgment on Stovall's First Amendment claim.  *See Willis v. Siegelman*, 307 F. Supp. 2d 1236, 1243 (M.D. Ala. 2004) (Albritton, J.).  The Court finds that issues of fact exist as to Stovall's allegation of a violation of his First Amendment rights and Officer Allums has failed to provide evidence that Stovall's First Amendment rights were not violated.[33]  Accordingly, the motion for summary judgment filed by Officer Allums is due

---

[32]  (Am. Compl. at 4.)

[33]  In support of his motion, Officer Allums only argues that because he had probable cause to arrest Stovall, the First Amendment Claim should be dismissed.  This argument is unavailing. Because the Court has found that arguable probable cause did not exist to arrest Stovall, Officer Allums is not entitled to qualified immunity for this arrest and Stovall's First Amendment claim does not correspondingly fail.  *But see Redd,* 140 F.3d at 1384.  Furthermore, Stovall's speech was protected under the First Amendment.  *See  Hill*, 482 U.S. at 461 (noting that speech is protected unless it is "likely to produce a clear and present danger of a serious substantive evil that rises far above public inconvenience, annoyance, or unrest").  As there is no evidence that Stovall uttered "fighting words" towards Officer Allums, Stovall's arrest based upon his use of protected speech could be viewed by a reasonable factfinder as a violation of Stovall's First Amendment rights.  *See Chaplinsky v. State of New Hampshire,* 315 U.S. 568, 571-72 (1942) ("Fighting" words, or words "which by their very utterance inflict injury or tend to incite an immediate breach of the peace", are not protected by the First Amendment.)  Accordingly, the Court concludes that there is a genuine

18

to be denied in relation to Stovall's Section 1983 claims.

B.     *Constitutional Claim Against City of Dothan*[34]

Stovall alleges that the City of Dothan is liable for the violation of his constitutional rights which occurred when Officer Allums unlawfully arrested him.[35] The Supreme Court has placed strict limitations on municipal liability under Section 1983. Municipalities "may not be held liable for constitutional deprivations on the theory of *respondeat superior*. Rather, they may be held liable only if such constitutional torts result from an official government policy, the actions of an official fairly deemed to represent government policy, or a custom or practice so pervasive and well-settled that it assumes the force of law."

_____

issue of material fact as to whether a First Amendment violation occurred and whether qualified immunity protects Officer Allums.

[34] The City of Dothan argues that Stovall's Section 1983 claims are subject to summary judgment because he has failed to establish a constitutional violation. Since the Court has already found that – under Stovall's version of the facts – he has established a violation of his Fourth Amendment rights and a genuine issue of material fact exists as to whether his First Amendment rights were violated, *see infra*, the Court finds that the City of Dothan is not entitled to summary judgment on this basis.

[35] The Court notes that in the Amended Complaint, Stovall does not allege that the deprivation of his constitutional rights was the result of a municipal custom or policy. (*See* First Am. Comp. 3 - 4.) Instead, the Amended Complaint appears to allege a Section 1983 claim against the City of Dothan based upon *respondeat superior*. The liberal pleading requirements under Rule 8 of the Federal Rules of Civil Procedure do not afford Stovall with an opportunity to raise this new claim of municipal custom or policy at this stage of the case. *Cooley v. Great S. Wood Pres.,* 2005 WL 1163608, *2 (11th Cir. May 18, 2005) ("This [liberal pleading] standard, however, does not afford plaintiffs with an opportunity to raise new claims at the summary judgment stage.") (citation omitted). "A plaintiff may not amend [his] complaint through argument in a brief opposing summary judgment." *Id.* at *3. Accordingly, Stovall's Section 1983 claim against the City of Dothan is due to be dismissed on this basis. Notwithstanding, as the parties have argued and presented evidence on this issue of custom or policy, the Court will address their argument.

*Denno v. School Bd. of Volusia County*, 218 F.3d 1267, 1276 (11th Cir. 2000) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)). "Plaintiff must identify a policy or custom and show that the policy or custom inflicted the injury." *Babers*, 152 F. Supp. 2d at 1312 (quoting *Gold v. City of Miami,* 151 F.3d 1346, 1350 (11th Cir. 1998)).

In this case, Stovall contends that his arrest and prosecution were the result of a custom or policy with the City of Dothan Police Department.[36]  Specifically, Stovall argues that the City of Dothan has routinely failed to correct the constitutionally offensive actions of its police officers, amounting to a tacit authorization of, if not deliberate indifference to, police misconduct.[37]  Therefore, Stovall, relying on numerous previous decisions entered by this Court in cases against the City of Dothan,[38] seeks to hold the City of Dothan liable based

---

[36]  Stovall argues that this policy or custom of deliberate indifference was established by the City of Dothan's former police chief, John White.  (*See* Pl.'s Br. 29.)

[37]  In his affidavit, Stovall asserts that, one week after the incident at issue occurred,  he lodged a formal complaint against Officer Allums at the City of Dothan Police Department.  (Pl.'s Ex. J, Pl.'s Aff.)  The Internal Affairs division of the Police Department has no records of a complaint filed by Stovall.  (Doc. # 61, Def.'s Br. 12) ("all complaints against Officer Allums [were provided] to the Court for an in camera inspection on a discovery issue on May 30, 2005.  There was no complaint from Mr. Stovall.")

[38]  Stovall relies upon this Court's decisions in *McCray v. City of Dothan*, 169 F. Supp. 2d 1260 (Dement, J.), *aff'd in part and rev'd in part*, No. 01-15756 (11th Cir. 2003); *Sumlar v. City of Dothan*, No. 1:00-cv-717-D (M.D. Ala. 2001) (Dement, J.); *Bivins v. City of Dothan*, No. 1:99-cv-397-D (M.D. Ala. 2000) (Dement, J.).  These cases involve claims of excessive force and a failure to train with regard to self-reporting such use of force.  These cases are not factually similar and do not involve Officer Allums.  Moreover, there is no claim alleged against the City of Dothan for failure to implement an effective reporting policy in Stovall's Complaint nor the Amended Complaint.  (*See* Compl., First Am. Compl.)  Further, it is apparent from Stovall's brief in opposition to the motions for summary judgment, that he relies upon these opinions, and the facts assessed therein, as evidence to support his arguments.  Although these opinions are persuasive authority for this Court, they do not constitute evidence which the Court can consider in determining the motions.  *See* Fed. R. Civ. P. 56.

upon a custom or policy of deliberate indifference towards police misconduct.[39]

In the context of allegations of inadequate training and supervision, "a plaintiff may prove a city policy by showing that the municipality's failure to train evidenced a 'deliberate indifference' to the rights of its inhabitants." *Gold v. City of Miami*, 151 F.3d 1346, 1350 (11th Cir. 1998) (internal citation omitted). "A constitutional deprivation can occur 'where the failure to train [or supervise] amounts to deliberate indifference to the rights of persons with whom the police come into contact.'" *Romero v. City of Clanton*, 220 F. Supp. 2d 1313, 1318 (M.D. Ala. 2002) (quoting *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)). Deliberate indifference requires a plaintiff to "present some evidence that the municipality knew of a need to train and/or supervise *in a particular area* and the municipality made a deliberate choice not to take any action." *Id*. at 1350-1351 (internal citations omitted) (emphasis added). However, "without notice of a need to train or supervise *in a particular area*, a municipality is not liable as a matter of law for any failure to train or supervise." *Id*. at 1351 (emphasis added). Hence, to the extent that the City of Dothan was aware of other incidents of similar conduct, this knowledge supports a theory that there was a failure to supervise or train. *See Romero*, 220 F. Supp. 2d at 1318 (citing *Gold*, 151 F.3d at 1350-51) (deliberate indifference established by knowledge of similar prior incidents).

In any event, the City of Dothan is not automatically liable under section 1983 even if it inadequately trained or supervised its police officers and those officers violated Stovall's

---

[39] (Pl.'s Br. 29-30.)

constitutional rights.  The United States Supreme Court has explained that there are only "limited circumstances" in which an allegation of a failure to train or supervise can be the basis for liability under § 1983.  *See City of Canton*, 489 U.S. at 387.  The Supreme Court has instructed that these "limited circumstances" occur only where the municipality inadequately trains or supervises its employees, this failure to train or supervise is a city policy, and that city policy *causes* the employees to violate a citizen's constitutional rights. *Id.* at 389-91 (emphasis added).

In an effort to substantiate his claim against the City of Dothan, Stovall states in his opposition brief that "in recent years the City of Dothan has seen a flurry of complaints and allegations against an abusive and oppressive [police] department."[40]  Stovall's claim that there is a history of widespread abuse and police misconduct by the police department or City of Dothan, is neither based on personal knowledge nor is it supported with any other admissible evidence.[41]  Stovall has failed to produce any evidence that support his claims that

---

[40]  (Pl.'s Br. 29.)

[41]  Stovall has presented no evidence which supports a finding that a pervasive practice of constitutional violations now exists.  Stovall's evidence, which relates solely to this incident, fails to establish a persistent failure to take disciplinary action on the part of the City of Dothan.  *See Church v. City of Huntsville.* 30 F.3d 1332, 1345 (11th Cir. 1994) ("Normally random acts or isolated incidents are insufficient to establish a custom or policy." (citing *Depew v. City of St. Marys*, 787 F.2d 1496, 1499 (11th Cir. 1986)).  In *Depew v. City of St. Marys*, 787 F.2d 1496, 1499 (11th Cir. 1986), the Eleventh Circuit held that to establish a practice or custom it is generally necessary to show a persistent and widespread practice.  Moreover, actual or constructive knowledge of such customs must be attributed to the governing body of the municipality.  *Id.*  In *Depew*, a police brutality case, the Eleventh Circuit upheld a jury verdict for the plaintiffs on the basis of approximately five prior incidents of excessive force.  The Court held that "while the mayor and [city] council members were aware of prior complaints of excessive force, they continued to assert that the department's supervision was satisfactory and that the officers were doing a good job." *Id.*

22

the City of Dothan has inadequate policies and training[42] and that such policies and training

rise to the level of "deliberate indifference" on the part of the City of Dothan.[43]  Moreover,

---

at 1498.  Because "the city had knowledge of improper police conduct, but failed to take proper remedial action," *id.* at 1499, the Court found that the jury could legitimately infer that the city "had implicitly ratified a custom or policy permitting the police to use excessive force against its citizens," *id.* at 1501.  In *Brooks v. Scheib,* 813 F.2d 1191, 1193 (11th Cir. 1987), another police brutality case, the Circuit explained that:

> A municipality's failure to correct the constitutionally offensive actions of its police department may rise to the level of a "custom or policy" if the municipality tacitly authorizes these actions or displays deliberate indifference towards the police misconduct.

*Id.*  The Court reversed the district court's judgment for the plaintiff, holding that "[q]uite simply, there [was] no evidence that city officials were aware of past police misconduct."  *Id.*  Here, Stovall has presented no evidence of prior similar incidents involving Officer Allums or the Dothan Police Department.  He has also presented no evidence that any final policymaker was ever aware of any incidents similar to the one alleged in the Amended Complaint.  Consequently, Stovall has failed to produce any evidence sufficient to prove a persistent failure on the part of the City of Dothan to supervise or take disciplinary action against its officers for improper conduct similar to the conduct at issue.

[42]  Indeed, Stovall's feeble attempt to prove that his injury could have been avoided if better training or policies had been implemented by the City of Dothan is ineffectual.  "[T]o prove that an injury or accident could have been avoided if an officer had better or more training, sufficient to equip him to avoid the particular injury-causing conduct" is insufficient to show inadequate training or policy.  *Canton*, 489 U.S. at 391.  Consequently, Stovall's contention that his constitutional injury is evidence of inadequate training procedures or policy is insufficient.

[43]  Stovall argues that four years prior to the filing of his complaint, the Police Department had received at least six complaints against Officer Allums, many of which are similar in nature. (Pl.'s Br. 10.).  To the contrary, Officer Allums asserts in his affidavit that prior to the incident at issue, he had received only three citizen complaints.  (Doc. # 61, Def.'s Ex. E, Allums' Aff. ¶ 8.) According to Officer Allums, none of the complaints involved claims of false arrest, and all were investigated and determined to be unfounded.  (*Id.*)  Stovall presents no evidence which refutes these statements by Officer Allums.  In his response in opposition to the motions for summary judgment, Stovall asserts that he cannot challenge the evidence submitted by the City of Dothan because it has refused to provide him with the records relating to the Internal Affairs Investigation.  (Pl.'s Br. 10.) The Court notes that this discovery issue was resolved by Magistrate Judge Vanzetta Penn McPherson on July 5, 2005 (*see* Docs. # 67, 68, 69), and the relevant documents were disclosed to Stovall on July 13, 2005 (*see* Doc. # 71).  Notwithstanding his receipt of these documents, Stovall

Stovall has presented no evidence that *any* policy or custom employed by the City of Dothan caused his injury.[44]  *See Sewell v. Town of Lake Hamilton,* 117 F.3d 488, 489 (11th Cir. 1997) ("A municipality may be held liable under § 1983 if the plaintiff shows that a 'custom' or 'policy' of the municipality was the 'moving force' behind the constitutional deprivation." (citing *Monell,* 436 U.S. at 690-94)).  Rather, Stovall has merely presented unsubstantiated assertions which, alone, are not enough to withstand a motion for summary judgment.  *See Celotex*, 477 U.S. at 322.  Stovall's unsupported and speculative allegations of custom and policy simply do not suffice to establish municipal liability under Section 1983.  *See Babers v. City of Tallassee*, 152 F. Supp. 2d 1298 (M.D. Ala. 2001).  Accordingly, this Court finds that Stovall has failed to create a genuine issue for trial that a policy or custom of the City of Dothan caused his injuries.  Therefore, the Court concludes that the City of Dothan's motion for summary judgment in relation to Stovall's Section 1983 claims is due to be

---

has not filed any motions pertaining to the submission of this new evidence to the Court.  As Stovall has failed to supplement his response with this new evidence, the Court does not have the ability to consider it in deciding the motions filed by Defendants.  In other words, this evidence is simply not before this Court because Stovall failed to submit it.

[44]  Although Stovall has presented evidence of alleged unlawful conduct by the police department (i.e., evidence of unlawful usage of consumer credit reports, unauthorized investigations into the criminal background of city commissioners , etc.), he has presented no evidence of any prior false arrest by officers in which the officers lacked probable cause to arrest an individual for disorderly conduct.  Without such prior incident, the City of Dothan had no notice of a need to train or supervise its officer in this area.  *Gold*, 151 F.3d at 1351 (finding no liability for failure to train when plaintiff presented no evidence of prior incidents).  Indeed, the record is bereft of evidence of abuses similar to those alleged in the Amended Complaint sufficient to put the City of Dothan on notice.  Accordingly, the Court finds that Stovall has failed to demonstrate a history of violations which would indicate that the City of Dothan knew of a need to implement new policies or provide new training, but made a conscious and deliberate decision not to do so.  *See Gold*, 151 F.3d at 1350.

granted.[45]

C.    *State Law Claims*

In the Amended Complaint, Stovall alleges state law claims of false imprisonment and malicious prosecution against the City of Dothan and Officer Allums.  He also brings a state law claim of negligent, wanton and/or willful hiring, training and/or supervision against the City of Dothan.  Defendants move for summary judgment on all of Stovall's state law claims alleged against them.  The Court will address each of these claims in turn.

1.    *State Law Claims Against Officer Allums*

a.    *False Imprisonment*

Stovall claims that Officer Allums is liable for false imprisonment under Alabama law,  which "consists of the unlawful detention of the person of another for any length of time whereby he is deprived of his personal liberty." *Ala. Code* §  6-5-170 (1975).  *See Big B, Inc. v. Cottingham,* 634 So.2d 999, 1001 (Ala. 1993).  A wrongful or false arrest will support a claim for false imprisonment.  *Upshaw v. McArdle,* 650 So.2d 875, 878 (Ala. 1994).  Officer Allums argues that his arrest of Stovall was lawful, and therefore privileged, because he had probable cause to believe Stovall had committed the offense of disorderly

---

[45]    The Court notes that Stovall did not argue any theories pertaining to deliberate indifference in screening Officer Allums during the hiring process in his opposition to the motions for summary judgment.  (*See* Pl.'s Br.).  Hence, to the extent that Stovall alleged in his Amended Complaint that the City of Dothan had a defective policy or custom regarding the hiring of its police officers the Court deems that this claim has been abandoned.  *See Walton ex rel. R.W. v. Montgomery County Bd. of Educ.,* 2005 WL 1217256, *4 (M.D. Ala. May 20, 2005) (Albritton, J.) (citing *Resolution Trust Corp. v. Dunmar Corp.,* 43 F.3d 587, 599 (11th Cir.1995) ("[T]he onus is upon the parties to formulate arguments; grounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned.")).

conduct.  *See Franklin v. City of Huntsville,* 670 So.2d 848, 852, (Ala. 1995) ("[P]robable cause must exist to make a lawful arrest"); *See also Ala. Code.* § 15-10-3(a)(1) (authorizing an officer to arrest a person without a warrant, "if a public offense has been committed or a breach of the peace threatened in the presence of the officer").  However, Alabama's standard for the existence of probable cause is the same as the federal standard.  *See Nesmith v. Alford,* 318 F.2d 110, 122 (5th Cir. 1963) ("The Alabama standard of probable cause in actions for malicious prosecution appears to be the traditional one").[46]  Because the Court has already found that – under Stovall's version of the facts Officer Allums did not have arguable probable cause to arrest Stovall without a warrant for disorderly conduct for purposes of his Fourth Amendment claim – such also implies that no probable cause existed for purposes of his state law claim for false imprisonment.  Therefore, Officer Allums is not entitled to summary judgment on this ground.

Officer Allums also asserts that, pursuant to the discretionary function or state-agent immunity provided by *Ala. Code* § 6-5-338 (1975),[47] he is entitled to prevail on Stovall' state

---

[46]  In *Bonner v. City of Prichard, Ala.,* 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit issued prior to October 1, 1981.

[47]  Section 6-5-338 provides in pertinent part as follows:

(a) Every peace officer, except constables, who is employed or appointed pursuant to the Constitution or statutes of this state, whether appointed or employed as such peace officer by the state or a county or municipality thereof, or by an agency or institution, corporate or otherwise, created pursuant to the Constitution or laws of this state and authorized by the Constitution or laws to appoint or employ police officers or other peace officers, and whose duties prescribed by law, or by the lawful terms of their employment or appointment, include the enforcement of, or the investigation and reporting of violations of, the criminal laws of this state, and who

law claim alleging false imprisonment.  The Alabama legislature has granted statutory immunity from tort liability to municipal police officers for "conduct in performance of any discretionary function within the line and scope of his or her law enforcement duties." *Ala. Code* § 6-5-338(a).  Such immunity shields a state agent from suit in his or her personal capacity for claims based upon "exercising judgment in the enforcement of the criminal laws of this State, including but not limited to, law-enforcement officers' arresting or attempting to arrest persons(.)" *Ex parte Cranman*, 792 So.2d 392, 405 (Ala. 2000).[48]  No immunity is available, however, "when the State agent acts willfully, maliciously, fraudulently, in bad faith, beyond his or her authority, or under a mistaken interpretation of the law."  *Id.*  Therefore, state-agent immunity shields Officer Allums from tort liability except to the extent that his arrest of Stovall for disorderly conduct could reasonably be said to have been willful or malicious conduct or conduct engaged in bad faith.[49]

---

is empowered by the laws of this state to execute warrants, to arrest and to take into custody persons who violate, or who are lawfully charged by warrant, indictment, or other lawful process, with violations of, the criminal laws of this state, shall at all times be deemed to be officers of this state, and as such shall have immunity from tort liability arising out of his or her conduct in performance of any discretionary function within the line and scope of his or her law enforcement duties.

*Ala. Code* § 6-5-338 (1975).

[48]   The Alabama Supreme Court has recently refined its standard for entitlement to discretionary function immunity, otherwise known as state-agent or state-function immunity.  In *Ex parte Butts,* 775 So.2d 173 (Ala. 2000), the court adopted as its position the "restatement" of the law of state-agent immunity that was advanced by a plurality in *Ex parte Cranman,* 792 So.2d 392 (Ala. 2000).

[49]   This Court is mindful that qualified immunity under federal law and state-agent immunity under Alabama law are not identical; federal immunity employs an objective, reasonable-officer standard, while state immunity is a subjective inquiry into what the defendant officers actually

27

Under the circumstances in this case, the Court believes that a jury could reasonably determine that Stovall's arrest was malicious and in bad faith. The evidence, viewed most favorably to Stovall, suggests that Officer Allums had no grounds to believe Stovall had committed any offense whatsoever, but rather simply did not like Stovall questioning his authority or verbalizing criticism towards him. Consequently, the subsequent arrest of Stovall was unjustified and supports an inference of action with malice. *See Wal-Mart Stores, Inc. v. Goodman,* 789 So.2d 166, 174 (Ala. 2000) (malice "may be inferred from a lack of probable cause or from mere wantonness or carelessness if the actor, when doing the act, knows it to be wrong or unlawful") (internal citation omitted). On this evidence, the Court cannot find, as a matter of law, that Officer Allums' conduct was not malicious or taken in bad faith. Accordingly, the Court must find, at this stage, that Officer Allums is not entitled to state-agent immunity in relation to Stovall's false imprisonment claims. *See generally Walker v. Briley*, 140 F. Supp. 2d 1249, 1262 - 1263 (N.D. Ala. 2001) (denying statutory state function immunity to an arresting officer because no probable cause existed to arrest suspect for disorderly conduct). Officer's Allums' motion for summary judgment on Stovall's claim of false imprisonment is thus due to be denied.

> b.   *Malicious Prosecution Claim*

Stovall claims that Officer Allums is liable under Alabama law for malicious

---

believed. *See Scarbrough v. Myles,* 245 F.3d 1299, 1303 n. 9 (11th Cir. 2001) (contrasting standards for award of immunity). Consequently, a federal court's finding that defendants are entitled to qualified immunity as to federal claims does not always compel the conclusion that the defendants are entitled to Alabama state-agent immunity, and vice versa.

prosecution.  In order to prevail on such a claim, a plaintiff has the burden at trial to prove the following elements: "(1) that the present defendant instituted a prior judicial proceeding against the present plaintiff; (2) that in instituting the prior proceeding the present defendant acted without probable cause and with malice; (3) that the prior proceeding ended in favor of the present plaintiff; and (4) that the present plaintiff was damaged as a result of the prior proceeding." *Walker*, 140 F. Supp. 2d at 1263-1264 (quoting *Delchamps, Inc. v. Bryant,* 738 So.2d 824, 831-32 (Ala. 1999)).  Officer Allums argues that Stovall cannot prove either the lack of probable cause or malice under the second element above.  He also argues that he is entitled to immunity on this claim under § 6-5-338.

The Court has previously held that under Stovall's version of the facts probable cause for his arrest was absent.  In addition, the Alabama Supreme Court recently explained with respect to the elements of malice and probable cause:

> Malice is an inference of fact, and it may be inferred from a lack of probable cause or from mere wantonness or carelessness if the actor, when doing the act, knows it to be wrong or unlawful. *Bryant,* 738 So.2d at 833.  Personal ill will or a desire for revenge is not essential for a finding of malice. *Delchamps, Inc. v. Larry,* 613 So.2d 1235, 1239 (Ala. 1992).  However, an inference of malice drawn from the lack of probable cause may be rebutted by evidence showing that the defendant acted in good faith. *Bryant,* 738 So.2d at 832.

*Wal-Mart Stores,* 789 So.2d at 174.  This Court previously found that there is sufficient evidence to believe that Officer Allums arrested Stovall maliciously and in bad faith for purposes of creating an exception to immunity under § 6-5-338.  There is no reason to

29

distinguish between that arrest and his subsequent act of instituting the criminal proceedings against Stovall.[50]  Accordingly, the Court finds that Officer Allums has failed to establish that Stovall cannot make out his prima facie case or that he, Officer Allums, must be entitled to state-agent immunity on this claim.  Summary judgment is, therefore, due to be denied as to this claim.

> ### 2.   State Law Claims Against City of Dothan
>
> #### a.   Abandoned Claim

At the outset, the Court notes that Stovall has abandoned one of his state law claims alleged against the City of Dothan.  Specifically, Stovall has abandoned his malicious prosecution claim alleged against the City of Dothan.  In his response to the motions for summary judgment, Stovall explicitly concedes that the City of Dothan is entitled to summary judgment on his malicious prosecution claims.[51]  Accordingly, the motion for summary judgment filed by the City of Dothan is due to be granted in relation to this claim.

> #### b.   Claims of False Imprisonment and Negligent, Wanton, Willful Hiring, Training and Supervision Against City of Dothan

Stovall alleges that the City of Dothan is liable for false imprisonment and negligent, wanton, willful hiring, training and supervision due to his unlawful arrest.  The City of Dothan argues that Stovall's state law claims against it must fail because it is entitled to

---

[50]  (*See* Def.'s Ex. 4, Criminal Compl.)

[51]  (Doc. # 56, Pl.'s Br. 23.)

immunity pursuant to *Ala. Code* § 6-5-338 (1975).[52]  The City of Dothan alternatively argues that it is not subject to liability for Stovall's state law claims under *Ala. Code* § 11-47-190 (1975).[53]

The City of Dothan properly argues that state-agent immunity under *Ala. Code* § 6-5-338 applies to municipalities.  *See Ex parte City of Gadsden,* 781 So.2d 936, 940 (Ala. 2000) ("The plain language of § 6-5-338(b), Ala.Code 1975, extends that discretionary-function immunity to the City.").[54]  In *Ex parte City of Gadsden*, the Alabama Supreme Court found that the police officer was entitled to state-agent immunity and thus extended that immunity to the city.  *Id.  See Howard v. City of Atmore,* 887 So.2d 201, 211 (Ala. 2003) ("It is well established that, if a municipal peace officer is immune pursuant to § 6-5-338(a), then, pursuant to § 6-5-338(b), the city by which he is employed is also immune.").

In this case however, the Court has found that Officer Allums is not entitled to state-agent immunity.  Thus, as Officer Allums is not entitled to this immunity under § 6-5-338(a),

---

[52] (Doc. # 31, Def.'s Br. 22.)

[53] The City of Dothan also argues that Officer Allums had probable cause to arrest Stovall, hence Stovall's imprisonment was not unlawful and his false imprisonment claims fails.  Because the Court has already found that – under Stovall's version of the facts – Officer Allums did not have arguable probable cause to arrest Stovall without a warrant for disorderly conduct for purposes of his Fourth Amendment claim and that no probable cause existed for purposes of his false imprisonment claim as alleged against Officer Allums, *see infra*, this Court likewise finds that no probable cause existed for purposes of his false imprisonment claim against the City of Dothan.  Consequently, the City of Dothan is not entitled to summary judgment on this ground.

[54] *Ala. Code* § 6-5-338(b) provides in relevant part: "[t]his section is intended to extend immunity only to peace officers and *governmental units or agencies authorized to appoint peace officers.*"  (Emphasis added).

31

the City of Dothan is not entitled to an extension of that immunity under § 6-5-338(b).  *See*

*Howard*, 887 So.2d at 211 (noting that "if the statute does not shield the officer, it does not

shield the city" (citing *Borders v. City of Huntsville,* 875 So.2d 1168, 1183 (Ala. 2003))).

The City of Dothan is thus due to be denied summary judgment on this ground.

In the alternative, the City of Dothan argues that it is not liable for Stovall's state law

claims because of *Ala. Code* § 11-47-190 (1975).[55]  Section 11-47-190 permits a cause of

action against the City of Dothan for Officer Allums' conduct only to the extent it was

negligent; claims based on his intentional or wanton misconduct may not be maintained.  *Ott*

*v. City of Mobile*, 169 F. Supp. 2d 1301, 1316 (S.D. Ala. 2001) (citing *Cremeens v. City of*

*Montgomery,* 779 So.2d 1190, 1200-01 (Ala. 2000); *Town of Loxley v. Coleman,* 720 So.2d

907, 909 (Ala. 1998); *Hilliard v. City of Huntsville,* 585 So.2d 889, 891 (Ala. 1991)).

"Section 11-47-190 'absolves a city from liability for an intentional tort committed by one

---

[55]  The statute provides, in relevant part:

**When municipality liable; joint liability of other persons or corporations.**
No city or town shall be liable for damages for injury done to or wrong suffered by
any person or corporation, unless such injury or wrong was done or suffered through
the neglect, carelessness or unskillfulness of some agent, officer or employee of the
municipality engaged in work therefor and while acting in the line of his or her duty
. . .  and whenever the city or town shall be made liable for damages by reason of the
unauthorized or wrongful acts or negligence, carelessness or unskillfulness of any
person or corporation, then such person or corporation shall be liable to an action on
the same account by the party so injured.  However, no recovery may be had under
any judgment or combination of judgments, whether direct or by way of indemnity
under Section 11-47-24, or otherwise, arising out of a single occurrence, against a
municipality, and/or any officer or officers, or employee or employees, or agents
thereof, in excess of a total $100,000 per injured person . . .

*Ala. Code* § 11-47-190 (1975).

of its agents. . .'" *Borders*, 875 So.2d at 1183 (quoting *Ex parte City of Gadsden*, 718 So.2d at 721).

The City of Dothan argues that Stovall cannot provide evidence that Officer Allums acted negligently, carelessly or unskillfully.[56]  The evidence before this Court, viewed in the light most favorable to Stovall, supports an inference that Officer Allums' arrest of Stovall was either intentional, wanton or negligent and is therefore sufficient to defeat the City of Dothan's motion for summary judgment on this ground.[57]  Simply put, construing the evidence in the light most favorable to Stovall, the Court cannot say as a matter of law that a remedy is not available under § 11-47-190 for Stovall.  Accordingly, the Court finds that the City of Dothan is not entitled to summary judgment on the basis of § 11-47-190.

---

[56]  (Doc. # 31, Def.'s Br. 25.)  The Court notes that the City of Dothan makes no argument that Officer Allums was not "engaged in work" for the City and/or was not "acting in the line of his . . . duty."  *See* Ala. Code § 11-47-190.

[57]  The City of Dothan also argues that Stovall's false imprisonment claim must fail because he alleged in the Amended Complaint that the false imprisonment was intentional and did not allege negligence.  (Doc. # 31, Def.'s Br. 20).  The City of Dothan is correct in asserting that Stovall did not allege negligence in relation to his false imprisonment claim in the Amended Complaint.  However, Stovall's failure to make such allegation does not cause that claim to fail against the City of Dothan.  The Alabama Supreme Court has noted that "in the context of claims for assault and battery, false imprisonment and false arrest . . . where a plaintiff alleges a factual pattern that *demonstrates* neglect, carelessness, or unskillfulness, the plaintiff has stated a cause of action [against the city] under *Ala. Code* 1975, § 11-47-90."  *Borders*, 875 So.2d at 1183 (internal quotations and citation omitted) (emphasis added).  Hence, Stovall need not specifically allege negligence in relation to his false imprisonment claim against the City of Dothan, he need only allege a factual pattern that demonstrates negligence.  The Court finds that Stovall has alleged such a factual pattern as his claim for false imprisonment is based upon Officer Allums' alleged neglect, carelessness and unskillfulness.  At this stage of the case and with the facts in such dispute, this Court cannot find, as a matter of law, that Officer Allums' conduct was not a result of negligence, carelessness and unskillfulness.  Consequently, the City of Dothan is therefore not entitled to summary judgment as to Stovall's claim of negligent false imprisonment.

## V.  CONCLUSION

For the reasons stated above, it is hereby ORDERED as follows:

1.      The motion for summary judgment filed by the City of Dothan  (Doc. # 30) is GRANTED in part and DENIED in part.  The motion is  GRANTED in relation to Plaintiff's Fourth Amendment and First Amendment claims, brought under Section 1983, as well as his malicious prosecution claim.  The motion is DENIED in all other respects.  Consequently, Plaintiff's state law claims of false imprisonment and negligent, wanton, willful hiring, training and supervision alleged against the City of Dothan shall proceed to trial.

2.      The motion for summary judgment filed by Officer Clark Allums (Doc. # 28) is DENIED.   Consequently, Plaintiff's Fourth Amendment and First Amendment claims, brought under Section 1983, as well as his false imprisonment and malicious prosecution claims under state law, alleged against Officer Clark Allums– in his individual capacity– shall proceed to trial.

It is further ORDERED that Plaintiff's claims against Officer Allums in his official capacity are hereby DISMISSED.

DONE this 16th day of August, 2005.


                                                       /s/ Mark E. Fuller
                                        _____
                                        CHIEF UNITED STATES DISTRICT JUDGE