IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| MEDIA GENERAL OPERATIONS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 1:04-cv-659-MEF |
| | ) | |
| CHRISTOPHER STOVALL, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND O R D E R

### I. INTRODUCTION

This cause is before the Court on Plaintiff's Renewed Motion for Summary

Judgment (Doc. # 170), which incorporates by reference Plaintiff's Motion for Summary

Judgment on Complaint for Declaratory Judgment (Doc. # 128).  The issue is whether a

private employer who hired an off-duty police officer as a security guard must indemnify

the officer for his conduct pursuant to ALA. CODE § 6-5-338(c).  For the reasons set forth

below, the motion is due to be DENIED.

### II. JURISDICTION & VENUE

This Court has subject matter jurisdiction under 28 U.S.C. § 1332 because

Defendant is a citizen of Alabama, Plaintiff is a Delaware corporation with its principal

place of business in Virginia, and the amount in controversy exceeds $75,000.      The

parties do not contest personal jurisdiction or venue, and the Court finds a sufficient

factual basis for each.

### III. STANDARD OF REVIEW

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "An issue of fact is 'genuine' if the record as a whole could lead a reasonable trier of fact to find for the nonmoving party. An issue is 'material' if it might affect the outcome of the case under the governing law." *Redwing Carriers, Inc. v. Saraland Apartments*, 94 F.3d 1489, 1496 (11th Cir. 1996) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322-23. Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions

2

on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at

324.  To avoid summary judgment, the nonmoving party "must do more than simply show

that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus.*

*Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  On the other hand, a court ruling

on a motion for summary judgment must believe the evidence of the nonmovant and must

draw all justifiable inferences from the evidence in the nonmoving party's favor.

*Anderson*, 477 U.S. at 255.  After the nonmoving party has responded to the motion for

summary judgment, the Court must grant summary judgment if there is no genuine issue

of material fact and the moving party is entitled to judgment as a matter of law.  FED. R.

CIV. P. 56(c).

## IV. FACTS AND PROCEDURAL BACKGROUND

The Court has carefully considered all deposition excerpts and documents

submitted in support of and in opposition to the motion.  The submissions of the parties,

viewed in the light most favorable to the nonmoving party, establish the following

relevant facts:[1]

On the evening of December 30, 2003,  Christopher Stovall ("Stovall") and his

young son, Keyon, were standing in line, on the second floor of the Dothan Civic Center

(hereinafter "Center"), waiting to purchase tickets for a high school basketball

---

[1] The parties did not mention or reference many of the facts of the underlying incident in
their briefs on the motion for summary judgment.  Many of these facts are relevant to the legal
issues raised by the summary judgment motion.  Therefore, the Court will consider the evidence
on the record in this case, including the depositions and affidavits of Stovall, Allums, and those
who witnessed the underlying incident.

tournament.  Media General (d/b/a *The Dothan Eagle*) ("Media General") was the lead

sponsor of the event.  A large crowd of individuals, approximately 100 to 150 people,

were gathered in line to purchase tickets on the second level of the Center.  Officer Clark

Allums ("Allums"), a police officer for the City of Dothan, was clothed in his uniform

and was working as security for the basketball tournament.[2]  After a few individuals

began to break the line, Ray Dyck ("Dyck"), who was waiting in line behind Stovall, saw

Allums and asked him to stop people from breaking the line.  Dep. of Christopher Stovall

(Doc. # 56-2, at 30).  In response to Dyck's request, Allums stated, in a loud and rude

tone, that 2,000 tickets would be sold and he was not on duty to form lines.  (*Id.*); Aff. of

Ray Dyck (Doc. # 56-4, at 1).

As Allums walked away, Stovall said to Dyck, "he [referring to Officer Alllums]

didn't have to get so smart with you."  (Doc. # 56-2, at 30).  Stovall also said, "Ray, don't

worry about it.  He didn't have to be ugly to you."  (*Id.* at 32).  Upon hearing Stovall's

statements to Dyck, Allums reversed direction and approached Stovall.  (*Id.* at 35, 36).

Allums angrily walked up to Stovall and  confronted him at close range about his

comments.  (*Id.*).  Allums approached Stovall "nose to nose" and "in a very threatening

manner," grabbed his arm and asked, "Do you have something to say?  Why do you want

to be smart?"  (*Id.*); (Doc. # 56-4, at 1).  Allums was "up in [Stovall's] face," and Stovall

calmly asked Allums for "some personal space" and requested that they talk about the

---

[2]  Media General had leased the civic center and hired security guards, including Allums.
Allums was carrying his police-issued weapon, radio, and handcuffs.

situation like gentlemen.  (Doc. # 56-2, at 35); (Doc. # 56-4, at 1).  Allums said that

Stovall "don't get no personal space."  (Doc. # 56-2, at 35, 37).  Allums said that Stovall

needed to go down to the first level of the Center.  Stovall asked Allums "Why?," and

Allums responded that it would be in his best interest to go downstairs.  (*Id.* at 36).

Stovall grabbed his son's hand and walked down to the first floor of the Center.  (*Id.*)

Allums had his hand on Stovall's arm from the time he approached him until the time

they started to walk downstairs.  (*Id.* at 58).  While he was upstairs, Stovall never refused

or disobeyed an order from Allums or the other officers who arrived for backup.  (Doc. #

56-4, at 2); Aff. of Denny McKinnon (Doc. # 56-5, at 2); Aff. of Danny McKnight (Doc.

# 56-6, at 2); Aff. of Eddie Jones (Doc. # 56-7, at 2).  While he was upstairs, Stovall

never raised his voice when speaking to Allums.  (Doc. # 56-4, at 2); (Doc. # 56-5, at 2);

(Doc. # 56-6, at 2); (Doc. # 56-7, at 2).

       After going down to the first floor, Allums ordered Stovall to leave the building.

(*Id.* at 52).  Stovall asked Allums why he was being thrown out.  (*Id.* at 53).  Corporal

Heath Carpenter, one of the police officers which arrived on the scene for backup, placed

Stovall in handcuffs.  (*Id.* at 53).  Carpenter did not say anything to Stovall.  (*Id.*).  Stovall

complied with the request of the police officers and was escorted outside the building.

Outside the Center, Allums told Stovall, "I was going to let you back in, but you were

trying to embarrass me and make me look bad in front of all these folks."  (*Id.* at 38).

        Stovall was transported to the jail and charged with disorderly conduct.  (*Id.* at

53).  Shortly thereafter, Stovall was released on bond.  (*Id.* at 61).  After being released,

Stovall retrieved his son and returned to the Center.  (*Id.* at 66).  Stovall saw Allums and requested his permission to attend the basketball tournament.  (*Id.*).  Allums gave Stovall permission.  (*Id.*).  Stovall purchased two tickets, and he and his son watched the basketball tournament without further incident.[3]  (*Id.*).

Stovall was subsequently tried on the charge of disorderly conduct in Dothan Municipal Court on June 29, 2004.  After a bench trial during which the court heard testimony from Stovall, Allums, Corporal Carpenter, Dyck and several other witnesses to the incident, the court found Stovall not guilty.

In July 2004, Stovall sued Allums and the City of Dothan in this Court.  (Doc. # 9).  Stovall sought damages for alleged violations of his constitutional rights pursuant to 42 U.S.C. § 1983 and for false imprisonment and malicious prosecution pursuant to Alabama tort law.  Additionally, Stovall sued the City of Dothan for negligent, wanton, and/or willful hiring, training, and supervision.  All of Stovall's claims arose out of the December 30, 2003 arrest.

---

[3] Allums vigorously contested Stovall's version of the events.  According to the affidavits and deposition testimony of Allums and Corporal Carpenter, Stovall was  loud, argumentative, refused to obey their orders, and attempted to draw attention to himself.  (Doc. # 56-3, at 32, 65) Dep. of Heath Carpenter (Doc. # 56-9, at 34).  Allums contends that the incident began by Stovall yelling loudly to him that he didn't have to be rude or ugly to Dyck.  Aff. of Clark Allums (Doc. # 61-6, at 3).  Allums thus walked over to Stovall to discuss his concerns.  Stovall became agitated and loudly told Allums to get out of his face or space.  (*Id.*).  Although Allums directed him to calm down, Stovall refused and continued to yell at Officer Alllums.  (*Id.*).  Allums told Stovall to step out of line and go downstairs, and Stovall repeatedly refused.  (*Id.*).  After Allums and Corporal Carpenter escorted him down to the first floor, Stovall continued to refuse to leave the Center.  (*Id.*).  Due to his refusal, Allums placed him under arrest for disorderly conduct.  (*Id.*).

On September 1, 2006, Media General intervened in this action as a Plaintiff seeking a declaratory judgment with respect to whether it has to indemnify Allums for Stovall's claims.  (Doc. # 125).  On September 6, 2006, Stovall and the City of Dothan filed a joint stipulation of dismissal because Stovall had settled his claims against the City of Dothan for $7,500.  (Doc. # 122).  On September 19, 2006, Stovall settled his claims against Allums for $100,000, and Stovall agreed to collect the judgment to the extent that Media General indemnified Allums.  (Doc. # 158-2).  As part of this settlement agreement, Allums assigned his right of indemnification to Stovall.  *Id.*

As a result of these settlements, the sole claims before this Court for resolution are those raised in the Complaint in Intervention (Doc. # 125).  With respect to these claims, Media General is the Plaintiff in Intervention and Stovall is the Defendant in Intervention. Media General asks this Court to enter a judgment declaring that Media General has no duty to indemnify Allums under § 6-5-338(c) of the Alabama Code.  In its motion for summary judgment, Media General makes several arguments.  First, it argues that it complied with § 6-5-338(c)'s requirement to insure for the acts of Allums "within the line and scope" of his employment with Media General, and that its compliance with the statute immunizes it from liability.  Second, it argues that even if it did not obtain the required insurance, it cannot be held liable because Allums did not act "within the line and scope" of his employment with Media General.  Finally, Media General makes several other arguments: (1) Allums has no standing to request indemnification from Media General, (2) Allums's settlement with Stovall was unreasonable and thus Media

7

General does not have to indemnify Allums, and (3) § 6-5-338(c) is unconstitutional.  The

Court will address these arguments in turn.

## V. DISCUSSION

### A. Whether § 6-5-338(c) provides immunity to those persons or entities who comply with its requirements

Alabama law requires private employers who hire off-duty police officers as

security guards to obtain liability insurance.  ALA. CODE § 6-5-338(c).  Media General

argues that it obtained the required insurance, and thus "no direct liability can be imposed

against Media General as a matter of law."  (Doc. # 128, at 14).  The full text of the

statute reads:

> Every private, non-governmental person or entity who employs a peace officer
> during that officer's "off-duty" hours to perform any type of security work or to
> work while in the uniform of a peace officer shall have in force at least $100,000
> of liability insurance, which insurance must indemnify for acts the "off-duty"
> peace officer takes within the line and scope of the private employment.  The
> failure to have in force the insurance herein required shall make every individual
> employer, every general partner of a partnership employer, every member of an
> unincorporated association employer, and every officer of a corporate employer
> individually liable for all acts taken by an "off-duty" peace officer within the line
> and scope of the private employment.

ALA. CODE § 6-5-338(c).  It does not appear that there exist any reported decisions

interpreting this statute.  "When construing a state statute, [a federal court] look[s] to state

rules of statutory construction, because the same rules apply in federal court as would

apply in a state court." *Municipal Util. Bd. of Albertville v. Alabama Power Co.*,

21 F.3d 384, 387 (11th Cir. 1994).  Alabama law mandates that "where plain [statutory]

language is used, the court is bound to interpret that language to mean exactly what it

says." *Ex parte State Dep't of Revenue*, 683 So. 2d 980, 983 (Ala. 1996). In this Court's view, the plain meaning of the statute required Media General to obtain at least $100,000 of insurance coverage to indemnify off-duty police officers whom it hired as security guards for acts within the line and scope of their employment as security guards. The statute also plainly provides that if Media General did not obtain this insurance, then it would be liable for the acts of the officers.

Media General urges this Court to read the plain language of § 6-5-338(c) as providing immunity from liability to private, nongovernmental persons or entities who comply with the statutory requirement to obtain liability coverage. However, contrary to Media General's interpretation, the plain language of the statute does not state that such immunity exists. Thus, the Court cannot find as a matter of law that Media General was immunized from liability by § 6-5-338(c) if it obtained the required insurance. For this reasons, Media General is not entitled to the declaratory judgment that it seeks as a matter of law.

**B. Whether Media General complied with § 6-5-338(c)**

Even assuming arguendo that Media General was correct in its assertion that compliance with § 6-5-338(c) can immunize a person or entity who obtains insurance covering off-duty police officers from suit by someone harmed by the off-duty officer, as the party moving for summary judgment, Media General has the burden of presenting undisputed evidence that Allums was covered as a matter of law. Here, it is undisputed that Media General obtained insurance from the United States Fidelity and Guaranty

9

Company ("USF&G").  (Doc. # 128-3).  The insurance coverage period was from December 28, 2001 to December 28, 2004, which includes the date of the arrest that gave rise to this case.

Off-duty police officers, and specifically Allums, are neither named insureds nor additional insureds under the policy.  The insurance contract covers "employees" of Media General.  (Doc. # 128-9, at 7).  Media General asserts that Allums was an "employee" and therefore covered under their insurance policy.[4]  In so doing, however, Media General does not rely on the definition of the word "employee" contained in the insurance policy, and it does not cite to any authority that would support its assertion that "employees" include off-duty police officers hired on a temporary basis to work at a special event.

In order to determine if the policy covered Allums, the Court must construe the language contained in the policy.  "The general rule is that insurance policies should be liberally construed in favor of the insured and words of the policy must be given their ordinary and generally understood meaning.  Strained or unusual construction of any of the terms should not be indulged in in favor of either the insurer or the insured." *Commercial Standard Ins. Co. v. New Amsterdam Cas. Co.*, 131 So. 2d 182, 184 (Ala. 1961) (citing *Kilby Car & Foundry Co. v. Georgia Casualty Co.*, 96 So. 319 (Ala. 1923)).

---

[4] Media General points out that § 6-5-338(c) does not require private companies to specifically name an individual police officer or their full-time employer on the policy, and thus, Media General argues, using the word "employees" is sufficient for the policy to cover off-duty police officers.  (Doc. # 128, at 14).

"Where an insurance policy defines certain words or phrases, a court must defer to the definition provided by the policy." *Twin City Fire Ins. Co. v. Alfa Mut. Ins. Co.*, 817 So. 2d 687, 692 (Ala. 2001) (citing *St. Paul Fire & Marine Ins. Co. v. Edge Mem'l Hosp.*, 584 So. 2d 1316 (Ala. 1991)).

The "Definitions" section of the policy defines "employee" as follows:

"Employee" includes a "leased worker."   "Employee" does not include a "temporary worker."

(Doc. # 128-9, at 11).[5]   The policy defines "leased worker" and "temporary worker" as follows:

"Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business.   "Leased worker" does not include a "temporary worker."   *Id.*

"Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave *or to meet seasonal or short-term workload conditions*.   *Id.* at 13 (emphasis added).

The word "employee" is not entirely defined.[6]   The contract merely says that "employee" includes a "leased worker" and excludes a "temporary worker."   The use of the word

---

[5] There are some minor exceptions to the definition of "employee" that are not applicable in this case.  *See* Commercial General Liability Coverage Form (Doc. # 128-9, at 7).

[6] "An undefined word or phrase in an insurance policy does not create an inherent ambiguity.  To the contrary, where questions arise as to the meaning of an undefined word or phrase, the court should simply give the undefined word or phrase the same meaning that a person of ordinary intelligence would give it." *Twin City Fire Ins. Co*, 817 So. 2d at 692 (citing *Carpet Installation & Supplies of Glenco v. Alfa Mut. Ins. Co.*, 628 So. 2d 560 (Ala. 1993)).

"includes" suggests that there are persons who could be "employees" but not "leased workers."

While Media General has asserted that Allums was an employee within the meaning of the policy, it has failed to provide any evidence in support of this conclusion. For example, Media General has not provided the Court with a copy of any agreement by which it obtained Allums's services. There is no evidence before the Court regarding the degree to which Media General directed or controlled Allums's work or the expected duration of that work. Without such facts, the Court cannot possibly find as a matter of law that the policy covered Allums. Indeed, what little evidence there is before the Court on this issue of coverage supports a conclusion that Allums was not covered.[7]

As a party seeking summary judgment on the basis of an argument that compliance with § 6-5-338(c) immunizes it from liability, Media General has the burden of presenting undisputed evidence that establishes as a matter of law that Allums was covered under the insurance policy. Media General failed to meet this burden because it did not adequately put forth evidence to support its contention that Allums was covered. To the contrary, the terms of the insurance policy and the evidence presented in this case suggest that Media General's insurance policy may have failed to comply with § 6-5-338(c) because the

---

[7] The evidence in this case supports the fact that Allums was not considered an employee under the USF&G policy. First, USF&G denied coverage in this case because it found that Allums was not an employee within the meaning of the policy. (Doc. # 151-6). Second, when it came time to hire off-duty police officers to work as security guards at a subsequent event, Media General amended the policy to include off-duty police officers hired for security. Doc # 154-2. Third, Allums was listed as a nonemployee on the 1099 form. (Doc. # 128-7).

12

insurance policy did not cover Allums.  Therefore, Media General's motion for summary judgment is due to be DENIED to the extent that it is based on a contention that it provided insurance coverage to Allums in compliance with § 6-5-338(c).

**C. Whether Allums acted "within the line and scope of the private employment"**

Media General argues that even if it did not insure for the acts of Allums, Allums did not act "within the line and scope" of his employment with Media General, and thus Media General cannot be liable under § 6-5-338(c).  Media General argues that Allums exceeded the scope of his private employment because he was "wearing his police uniform, operated pursuant to police procedures and under authority of a superior officer [who was on duty], and had acquired his employment through official police channels." (Doc. # 171, at 7-8).

Stovall counters that Allums acted in his capacity as a police officer, and he acted within the scope of his employment as a private security guard.  (Doc. # 173, at 2).  A police officer can arrest a person without a warrant any time a public offense is committed in his presence.  ALA. CODE § 15-10-3.  Thus, according to Stovall, because Media General hired Allums as a security guard, it must have expected that he may have had to arrest someone pursuant to his duties as a police officer.

Neither side cited relevant case law on the issue of whether Allums was "within the line and scope" of his employment with Media General.  Alabama cases involving off-duty police officers working as private security guards  have discussed the scope of private employment with respect to the doctrine of *respondeat superior*.  Under this doctrine, the

13

master is vicariously liable for torts, including assault and battery, committed by the servant in the line and scope of the latter's employment. *Plaisance v. Yelder*, 408 So. 2d 136 (Ala. Civ. App. 1981). Alabama law narrowly defines the line and scope of such employment as it pertains to off-duty police officers moonlighting as private security guards. In *Whitely v. Food Giant, Inc.*, 721 So. 2d 207 (Ala. Civ. App. 1998), an off-duty police officer was working as a security guard at a grocery store. *Id.* at 208. A man and a woman got into an argument over who was next in line to use a public telephone that was outside the store. The officer went outside after he learned of the situation. The man spoke to the officer, and then turned his back to the officer and the woman to use the phone. The woman called the man a "nigger." *Id.* The man turned around to face her and walked towards her with his fist clenched. The officer grabbed the man, pushed him against the wall, and held him. The officer called for assistance, and the man was arrested and charged with resisting arrest and disorderly conduct. *Id.*

The man brought various claims against the city, the officer, and the grocery store. *Id.* at 209. The court affirmed summary judgment in favor of the grocery store under the theory of *respondeat superior*. According to that court, "when an off-duty police officer witnesses an offense for which the perpetrator is arrested, the officer's status changes, and he is then acting in his capacity as a police officer and not his capacity as a security guard." *Id.* (citing *Dinmark v. Farrier*, 510 So. 2d 819 (Ala. 1987)). The grocery store presented evidence that the officer's "status changed to that of a police officer when he saw [the man] approaching the woman while making a fist." *Id.* The man did not present

14

evidence creating a substantial issue of material fact on the issue of when the officer's status changed.  The Court found that as a matter of law, the officer's status changed once he witnessed the man approach the woman in a threatening manner.  *Id.*  Thus, the grocery store was not liable for the officer's actions.  *Id.*

In this case, the issue is whether Allums acted "within the line and scope" of his private employment as a security guard.  Applying the "line and scope" standard of *respondeat superior* cases to § 6-5-338(c), Allums's status would have changed from a security guard to a police officer once he witnessed a crime, if he did at all.  In other words, once Allums witnessed a crime, he would be outside the "line and scope" of his employment with Media General, and thus, under § 6-5-338(c), Media General would not be liable for his acts.

The Court must examine the undisputed facts to determine when, if ever, Allums witnessed Stovall committing the crime of disorderly conduct.  Alabama defines disorderly conduct as follows:

> A person commits the crime of disorderly conduct if, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he:
>
> (1) Engages in fighting or in violent tumultuous or threatening behavior; or
> (2) Makes unreasonable noise; or
> (3) In a public place uses abusive or obscene language or makes an obscene gesture; or
> (4) Without lawful authority, disturbs any lawful assembly or meeting of persons; or
> (5) Obstructs vehicular or pedestrian traffic, or a transportation facility; or
> (6) Congregates with other person in a public place and refuses to comply with a lawful order of the police to disperse.

ALA. CODE § 13A-11-7.  The facts in this case are disputed.  Viewing the evidence in the light most favorable to the nonmoving party, Stovall was calm and obeyed police orders when he was on the second level of the Dothan Civic Center.  According to Allums, Stovall was loud and was trying to draw attention to himself.

Because these facts are in dispute, the Court cannot, as a matter of law, find that Allums witnessed Stovall committing the crime of disorderly conduct prior to his conduct that gave rise to Stovall's claims against him for false imprisonment, malicious prosecution, and a violation under § 1983.  Moreover, Media General has not met its burden of proof by presenting sufficient evidence that Allums acted outside the scope of his employment with Media General.  The Court cannot find as a matter of law that Media General is not liable for Allums's conduct.  Therefore, Media General's motion for summary judgment is due to be DENIED to the extent that it is based on a contention that Allums acted outside "the line and scope" of his employment with Media General.  .

## D. Media General's Remaining Arguments

### 1. Standing

First, Media General argues that only the City of Dothan has standing to request indemnification because § 6-5-338(c) was intended to indemnify only municipalities, and not police officers.  (Doc. # 128, at 16-18).  Media General has no authority which directly supports this argument.  Instead, Media General points out that municipalities in Alabama must defend and indemnify officers "sued for damages arising out of the performance of [their] official duties."  (Doc. # 128, at 16) (citing ALA. CODE § 11-47-24(a)).  The

"maximum liability a municipality has under Alabama law for bodily injury to a single person" is $100,000, which is the minimum amount of insurance required under § 6-5-338(c).  *Id.* (citing ALA. CODE § 11-93-2).  According to Media General, when read in the context of §§ 11-47-24(a) and § 11-93-2, § 6-5-338 "was intended to insure that 'off duty' police officers would never work for uninsured private parties so that there would be no additional exposure to the municipality as a result of such 'moonlighting.'"  *Id.* at 17.

Media Generals does not correctly read §§ 11-47-24(a) and § 11-93-2.  First, under § 11-47-24, municipalities must indemnify officers only for negligence.  *Benson v. City of Birmingham*, 659 So. 2d 82, 85 (Ala. 1995).  The claims against Allums in this case are not for negligence, but rather for § 1983, false imprisonment, and malicious prosecution.  Therefore, Allums cannot be indemnified by the City of Dothan pursuant § 11-47-24.  Because the City does not have to indemnify Allums under § 11-47-24, Media General's argument that § 6-5-338(c) is meant to protect the City fails.  Second, § 11-93-2's $100,000 cap does not apply to § 1983 claims.  *Patrick v. City of Florala*, 793 F. Supp 301, 302 (M.D. Ala. 1992) (citing *Gamble v. Fla. Dep't of Health & Rehab. Servs.*, 779 F.2d 1509, 1518  n.11 (11th Cir.1986)).  Thus, if the legislature intended to protect the City by making the minimum coverage of § 6-5-338(c) equal to the maximum liability of the City, then it did not have this intention with respect to § 1983 claims.  Media General has not established as a matter of law that § 6-5-338(c) was not intended to protect police officers.  Therefore, its motion for summary judgment on this basis must be DENIED.

17

### 2. Statute of Limitations

Second, Media General argues that Allums's indemnification claim is barred by the statute of limitations. (Doc. # 128, at 18). It points out that the statute of limitations is two years for malicious prosecution, false arrest, and civil rights violations. (Doc. # 128, at 18) (citing ALA. CODE §§ 6-2-38(h), (l), (n); *Jones v. Preuit & Maudlin*, 876 F.2d 1480 (11th Cir. 1989)). The incident took place in 2003, and no allegation was filed against Media General within two years of the incident. *Id.* However, the issue in this case is one of indemnification. An indemnification claim is relevant only when there is a judgment. The two-year statute of limitations for indemnification started to run once there was a judgment against Allums. *American Commercial Barge Line Co. v. Roush*, 793 So. 2d 726, 729 (Ala. 2000). Judgment was entered against Allums on October 16, 2006. (Doc. # 159). Therefore, Media General has not presented sufficient evidence that the statute of limitations has expired on Allums's indemnification claim, nor has it shown that it is entitled to judgment as a matter of law on the basis of the statute of limitations. According, the motion for summary judgment is due to be DENIED to the extent that it is based on the statute of limitations argument.

### 3. Reasonableness of Settlement

Third, Media General argues that Stovall's settlement with Allums was unreasonable, and thus Allums is not entitled to indemnification. (Doc. # 171, at 9-11). Stovall settled with Allums for $100,000. (Doc. # 158-2). Under Alabama law, an insurer can be bound by a consent judgment settling claims only to the extent that the consent

judgment was reasonable and entered into in good faith.  *Liberty Mut. Ins. Co. v. Wheelwright Trucking Co.*, 851 So. 2d 466, 478 (Ala. 2002).   Media General argues that the settlement was unreasonable for two reasons: (1) Stovall only suffered mental anguish, and no physical injury, and (2) it is "customary" in these types of cases for the City to pay most of the settlement, and not the police officer.  (Doc. # 171, at 10).  However, Stovall only settled his claim against the City for $7,500 (Doc. # 122), even though he could have collected up to $100,000 under ALA. CODE § 11-93-2.  Media General contends that Stovall settled with Allums for $100,000 only because he expected Media General's insurer to indemnify Allums.

Stovall counters by pointing out that all claims pursuant to § 1983 against the City of Dothan were dismissed by summary judgment, which meant that Stovall could not recover attorneys' fees from the City.  (Doc. # 173, at 3-4).  Stovall's remaining claims against the City of Dothan were "tenuous."  *Id.* at 4.  Thus, $7,500 was a reasonable settlement with the City of Dothan.  With respect to Allums, Stovall settled a § 1983 claim, for which Stovall could recover attorneys' fees.  *Id.*  Therefore, he argues, $100,000 was a reasonable settlement.  On the factual record before it, the Court cannot find as a matter of law that Stovall's settlement with Allums was unreasonable, and thus Media General is not entitled to summary judgment on this basis.

### 4. Constitutionality of § 6-5-338(c)

Finally, Media General argues that § 6-5-338(c) is unconstitutional if it makes private employers liable for the acts of off-duty police officers, even if they obtain

19

qualifying insurance.  (Doc. # 128, at 18-20).  Media General argues that, while the legislature may have a legitimate interest in protecting municipalities from liability for the conduct of off-duty police officers, that interest is not served by making private employers liable.  Media General cites *Bowman v. Township of Pennsauken*, 709 F. Supp. 1329 (D.N.J.1989), which involved a township resolution that has some similarities to the Alabama indemnification statute.  In *Bowman*, the ordinance required private employers who hired off-duty police officers as security guards to obtain liability insurance for the township and officers.  *Id.* at 1332.  The resolution required indemnification "whether or not it is judicially determined or agreed between any parties that the . . . officer was an employee of the Township or an employee of the employer."  *Id.* at 1332-33.  Thus, a private employer had to indemnify a township, even if an off-duty police officer responded to an incident in his official capacity.  *Id.* at 1342.  Police officers brought an equal protection challenge and argued that the statute impermissibly required insurance from private employers of moonlighting officers hired for security jobs, but not from employers of officers hired for nonsecurity jobs.  *Id.* at 1333.  Applying a rational basis standard, the court declared the resolution to be unconstitutional because "it unreasonable to force onto a third-party employer the entire cost of . . . insurance when police actions by the off-duty officers benefit the public."  *Id.* at 1341.

Section 6-5-338(c) is not as broad as the resolution in *Bowman* because it only applies to acts "within the line and scope" of private employment.  Unlike the resolution in *Bowman*, private employers in Alabama are not liable for acts of off-duty police officers

20

outside the scope of their private employment.  Therefore, *Bowman* is distinguishable in an important respect.  Media General has not established that it is entitled to judgment as a matter of law on the basis of this argument such that the Court could grant its summary judgment motion.

## VI. CONCLUSION

For the foregoing reasons, it is hereby ORDERED that

(1) Plaintiff's Renewed Motion for Summary Judgment (Doc. # 170) is DENIED.

(2) A telephone status conference is set for this Thursday, November 15, 2007, at 3:00 P.M., and it shall be arranged by counsel for Plaintiff.

Done on this 13th day of November, 2007.


                    /s/ Mark E. Fuller
                CHIEF UNITED STATES DISTRICT JUDGE