IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| MEDIA GENERAL OPERATIONS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 1:04-cv-659-MEF |
| | ) | (WO – Do not publish) |
| CHRISTOPHER STOVALL, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

This action is brought pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201.  Plaintiff Medial General Operations, Inc. ("Media General") seeks to determine whether or to what extent there is a duty on its part under Ala. Code § 6-5-338(c) to provide a defense or indemnity to Clark Allums ("Allums") for the claims alleged by Defendant Christopher Stovall ("Stovall") against Allums.  (Doc. # 125).  After weighing the evidence and testimony offered by the parties during a one-day bench trial, the Court finds that judgment is due to be entered in favor of Defendant and against Plaintiff.  In support of this judgment, the Court makes the following findings of fact and conclusions of law:

**I. FINDINGS OF FACT**

1. Media General is a Delaware Corporation with its principal place of business in Richmond, Virginia.

2. Media General publishes a newspaper named *The Dothan Eagle* in Dothan, Alabama.

3. Stovall is a resident citizen of the State of Alabama and resides in the Middle District of Alabama.

4. On the evening of December 30, 2003, Stovall and his young son, Keyon, went to the Dothan Civic Center (hereinafter "Center") to attend a high school basketball tournament.

5. The ticket window was on the second floor of the Center, and Stovall and his son were in a long line to purchase tickets. Ray Dyck ("Dyck") was close to Stovall in the line.

6. Media General was the lead sponsor of the event. Media General leased the Center and paid for security. Media General hired off-duty police officers to work as security guards, including Allums, a City of Dothan police officer. Allums wore his police uniform and carried his police-issued weapon, radio, and handcuffs.

7. At some point while Stovall and Dyck waited in line, Dyck asked Allums to stop some individuals from breaking the line. In response to this request, Allums stated, in a sarcastic and rude tone, that 2,000 tickets would be sold and he was not on duty to form lines.

8. As Allums walked away, Stovall told Dyck that Allums "didn't have to get smart with you or ugly with you, and that's nothing for you to worry about." Stovall did not intend for Allums to overhear these comments, but Allums heard them.

9. Upon hearing Stovall's comments to Dyck, Allums reversed direction and

        approached Stovall, approached Stovall "nose to nose," and grabbed Stovall's arm. Allums yelled and asked why Stovall "want[ed] to be smart."

10. Stovall calmly asked Allums for personal space and requested that they talk about the situation. Stovall said, "We can talk like gentlemen because it's no reason for you to be all up in my face." Allums responded by saying that Stovall would not "get any personal space."

11. Allums said that Stovall needed to go downstairs to the first floor of the Center and that it was in Stovall's best interest to do so. Stovall did not immediately go downstairs. Stovall asked Allums why he was being asked to go downstairs, but Allums did not explain to Stovall why he was being asked to go downstairs.

12. Stovall took his son's hand and walked downstairs. Carpenter, who was called by Allums to assist, met Allums and Stovall on the platform between the first and second levels. Carpenter put his hands on Stovall as they walked downstairs.

13. After going down to the first floor, Allums asked Stovall to leave the building. Again, Stovall asked Allums why he was being thrown out, and Allums did not tell him why. Allums and Carpenter insisted that Stovall leave the Center. Allums told Stovall that he would have let Stovall go to the game, but Stovall "embarrassed him in front of the folks upstairs." Allums arrested Stovall, and the officers escorted Stovall outside the building.

14. Stovall was arrested for disorderly conduct. He was informed of the basis for his arrest when he was placed in the police car.

15. Stovall was transported to the jail and booked. Shortly thereafter, Stovall was released on bond.

16. Stovall retrieved his son and returned to the Center. Stovall saw Allums and requested his permission to attend the basketball tournament. Allums gave Stovall permission. Stovall purchased two tickets, and he and his son watched the basketball tournament without further incident.

17. On July 6, 2004, Stovall sued Allums and the City of Dothan. The claims against Allums were for (1) violations of the First and Fourth Amendments pursuant to 42 U.S.C. § 1983, (2) false imprisonment, and (3) malicious prosecution.

18. On August 19, 2005 and August 22, 2006, an attorney for Allums wrote letters to Media General requesting indemnification under Ala. Code § 6-5-338(c).

19. On September 1, 2006, Media General intervened in this action as a Plaintiff seeking a declaratory judgment with respect to whether it has to indemnify Allums for Stovall's claims.

20. On September 6, 2006, Defendant City of Dothan and Stovall reached a pro tanto settlement in the amount of $7,500.

21. On September 19, 2006, Stovall and Allums reached a settlement agreement wherein Allums agreed to a consent judgment against him in the amount of $100,000.00. Stovall agreed to collect the judgment to the extent that Media General indemnified Allums. As part of this settlement agreement, Allums assigned his right of indemnification to Stovall.

22.  Allums requested coverage from Media General's insurer. Coverage was denied on the basis that Allums was not insured under the policy.

## II. CONCLUSIONS OF LAW

1.  The issue in this case is whether a private employer who hired an off-duty police officer as a security guard must indemnify the officer for his conduct pursuant to Ala. Code § 6-5-338(c).

2.  Ala. Code § 6-5-338(c) provides as follows:

    > Every private, non-governmental person or entity who employs a peace officer during that officer's "off-duty" hours to perform any type of security work or to work while in the uniform of a peace officer shall have in force at least $100,000 of liability insurance, which insurance must indemnify for acts the "off-duty" peace officer takes within the line and scope of the private employment. The failure to have in force the insurance herein required shall make every individual employer, every general partner of a partnership employer, every member of an unincorporated association employer, and every officer of a corporate employer individually liable for all acts taken by an "off-duty" peace officer within the line and scope of the private employment.

    Ala. Code § 6-5-338(c)

3.  "When construing a state statute, [a federal court] look[s] to state rules of statutory construction, because the same rules apply in federal court as would apply in a state court." *Municipal Util. Bd. of Albertville v. Alabama Power Co.*, 21 F.3d 384, 387 (11th Cir. 1994). Alabama law mandates that "where plain [statutory] language is used, the court is bound to interpret that language to mean exactly what it says." *Ex parte State Dep't of Revenue*, 683 So. 2d 980, 983 (Ala. 1996).

4.  Media General did not obtain insurance for Allums's conduct, as required by Ala. Code § 6-5-338(c).  Although Media General had a liability insurance policy, Allums was neither a named "insured" nor an "additional insured" as defined by that policy.

5.  Because Media General had no liability insurance in effect that satisfied the requirements of § 6-5-338(c), Media General is individually liable for all acts taken by Allums "within the line and scope of [his] private employment" with Media General.

6.  "[W]hen an off-duty police officer witnesses an offense for which the perpetrator is arrested, the officer's status changes, and he is then acting in his capacity as a police officer and not in his capacity as a security guard." *Whitely v. Food Giant, Inc.*, 721 So. 2d 207, 209 (Ala. Civ. App. 1998) (citing *Dinmark v. Farrier*, 510 So. 2d 819 (Ala. 1987)).

7.  Disorderly conduct, the crime for which Stovall was arrested, is defined as follows:

    > A person commits the crime of disorderly conduct if, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he:
    >
    > (1) Engages in fighting or in violent tumultuous or threatening behavior; or
    > (2) Makes unreasonable noise; or
    > (3) In a public place uses abusive or obscene language or makes an obscene gesture; or
    > (4) Without lawful authority, disturbs any lawful assembly or meeting of persons; or

   (5)  Obstructs vehicular or pedestrian traffic, or a transportation facility; or

   (6)  Congregates with other person in a public place and refuses to comply with a lawful order of the police to disperse.

Ala. Code § 13A-11-7.

8. If Allums witnessed Stovall commit the crime of disorderly conduct, he would be outside the scope of his private employment with Media General.

9. Allums provoked the December 30, 2003 incident with Stovall, without cause, by approaching Stovall nose to nose, yelling in his face in front of a crowd, and telling Stovall that he needed to leave the Center. This provocation was within the line and scope of Allums's private employment with Media General because Allums did not witness the crime of disorderly conduct. Stovall had the right to question the basis for Allums's order to leave and his arrest because Stovall reasonably believes that there is no basis for an arrest.

10. Media General had notice of Stovall's claims against Allums and refused to defend Allums. Therefore, Media General must indemnify Allums if he was potentially liable. *Liberty Mut. Ins. Co. v. Wheelwright Trucking Co.*, 851 So. 2d 466, 476 (Ala. 2002) (citing *Stone Bldg. Co. v. Star Elec. Contractors, Inc.*, 796 So. 2d 1076, 1090 (Ala. 2000)). Media General would be bound by any reasonable settlement made in good faith.

11. The Court must look at the extent of Stovall's damages and the reasonableness of Stovall's settlement with Allums to determine the extent to which Media General

must indemnify Allums.

12. Stovall settled the following claims against Allums: (1) violations of the First and Fourth Amendments pursuant to 42 U.S.C. § 1983, (2) false imprisonment, and (3) malicious prosecution.

13. Section 1983 provides judicial remedies to a claimant who can prove that a person acting under color of state law committed an act that deprived the claimant of some right, privilege, or immunity protected by the Constitution or laws of the United States.  42 U.S.C. § 1983.  Stovall claims that Officer Allums violated his Fourth Amendment and First Amendment rights by unlawfully arresting him without probable cause.  To determine whether Allums was potentially liable for Stovall's § 1983 claim, the Court must assess whether he would have been protected by qualified immunity.

14. "Qualified immunity offers complete protection for government officials sued in their individual capacities if their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  "The purpose of this immunity is to allow government officials to carry out their discretionary duties without fear of personal liability or harassing litigation, protecting from suit all but the plainly incompetent or one who is knowingly violating the federal law." *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002) (internal quotation marks and citations

omitted).  In this case, the parties have not contested that Allums acted in his discretionary capacity when he arrested Stovall.

15. The Supreme Court set forth a two-part test in order to determine whether a public official is entitled to qualified immunity.  First, the Court must determine if the facts alleged show the officer's conduct violated a constitutional right.  *Vinyard*, 311 F.3d at 1346 (citing *Lee*, 284 F.3d at 1194).  If a constitutional violation occurred, then the Court must determine if the right was clearly established.  *Id.* (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001)).  If the right was not clearly established, then the official is entitled to qualified immunity.

16. The First Amendment protects speech unless it is "likely to produce a clear and present danger of a serious substantive evil that rises far above public inconvenience, annoyance, or unrest." *City of Houston v. Hill*, 482 U.S. 451, 461 (1987).  "[T]he First Amendment protects a significant amount of verbal criticism and challenge directed at police officers." *Id.*; *see also Norwell v. City of Cincinnati*, 414 U.S. 14, 16 (1973) (per curiam) ("Surely, one is not to be punished for nonprovocatively voicing his objection to what he obviously felt was a highly questionable detention by a police officer.").

17. The Fourth Amendment's guarantee against unreasonable searches and seizures encompasses the right to be free from arrest without probable cause.  *See Crosby v. Monroe County,* 394 F.3d 1328, 1332 (11th Cir. 2004) (citing *Von Stein v. Brescher,* 904 F.2d 572, 579 (11th Cir. 1990)).  "Probable cause is 'defined in

9

terms of facts and circumstances sufficient to warrant a prudent man in believing that the suspect had committed or was committing an offense.'" *Id.* at 1332 (quoting *Gerstein v. Pugh,* 420 U.S. 103, 111 (1975)) (internal marks and citations omitted).

18. Qualified immunity applies only when there was arguable probable cause for an arrest, even if actual probable cause did not exist. *Jones v. Cannon,* 174 F.3d 1271, 1283 n.3 (11th Cir. 1999). "Arguable probable cause exists when an officer reasonably could have believed that probable cause existed, in light of the information the officer possessed." *Durruthy v. Pastor,* 351 F.3d 1080, 1089 (11th Cir. 2003) (internal marks and citation omitted).

19. With respect to the first part of the qualified immunity test, the evidence shows that Allums did not have arguable probable cause to arrest Stovall for disorderly conduct. Allums unnecessarily provoked a confrontation with Stovall in a crowded public place, and he tried to use his position as a police officer and his arrest power to get back at Stovall for Stovall's comments to Dyck. Stovall acted lawfully when he questioned the basis for Allums's order to move downstairs. Although he appeared to be agitated by Allums's conduct, Stovall did not escalate the confrontation with his response to Allums. Thus, the Court finds that Allums violated Stovall's First and Fourth Amendment rights by arresting him without probable cause for protected speech.

20. With respect to the second part of the qualified immunity test, "[f]or a

constitutional right to be clearly established, its contours must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002).  Public officials may be on notice that their conduct violates clearly established law if the unlawfulness of the action is apparent in light of preexisting law.  *See id.* at 739.

21. It is clearly established that "an arrest without probable cause to believe a crime has been committed violate[s] the Fourth Amendment." *Von Stein v. Brescher*, 904 F.2d 572, 579 (11th Cir. 1990); *see also Herren v. Bowyer*, 850 F.2d 1543, 1547 (11th Cir. 1988); *Babers v. City of Tallasee*, 152 F. Supp.2d 1298, 1304 (M.D. Ala. 2001).

22. The Court finds that Stovall's conduct clearly did not violate the disorderly conduct statute.  Stovall did not make an "unreasonable noise" like the arrestee in *Redd v. City of Enterprise*, a traveling minister who preached loudly enough to be heard across the street and thus gave the officers arguable probable cause to arrest him.  140 F.3d 1378, 1382-83 (11th Cir. 1998).  Stovall did not use "abusive or obscene language" during the confrontation with Allums, as defined by the Commentary to Ala. Code § 13A-11-7, which states that "subdivision (a)(3) is to be applied with narrow specificity, only to prohibit 'fighting words,'" or "those which by their very utterance inflict injury or tend to incite an immediate breach of the peace." *Chaplinsky v. New Hampshire*, 315 U.S. 568, 572 (1942).  The Court

finds that Stovall's comments to Dyck about Allums were not the kind of words that would tend to incite a person, especially a police officer, to approach the speaker nose to nose and yell. Stovall's speech clearly did not fit under subsections (1), (4), (5), and (6) of § 13A-11-7.

23. The Court finds that the Stovall's First and Fourth Amendment rights in this case were clearly established. No police officer could have reasonably believed that Stovall was committing the crime of disorderly conduct. Therefore, Allums was potentially liable for Stovall's § 1983 claim for violation of the First and Fourth Amendments.

24. "False imprisonment consists in the unlawful detention of the person of another for any length of time whereby he is deprived of his personal liberty." Ala. Code § 6-5-170. "Any exercise of force, or the express or implied threat of force, by which in fact the other person is deprived of his liberty, compelled to remain where he does not wish to remain, or to go where he does not wish to go, is an imprisonment." *Crown Cent. Petroleum Corp. v. Williams*, 679 So. 2d 651, 653 (Ala. 1996). A wrongful or false arrest will support a claim for false imprisonment. *Upshaw v. McArdle,* 650 So.2d 875, 878 (Ala. 1994).

25. There is sufficient evidence that Allums was potentially liable for false imprisonment. Allums used his position as a police officer to force Stovall to go downstairs to the first floor of the Center. This detention of Stovall was unlawful

because, for reasons explained earlier, Allums did not have probable cause.

26. Malicious prosecution consists of six elements: "(1) a prior judicial proceeding; (2) instigated by the defendant; (3) without probable cause; (4) with malice; (5) which was terminated in favor of the plaintiff; and (6) damages." *Delchamps, Inc. v. Larry*, 613 So. 2d 1235, 1238 (Ala. 1992) (citing *Brown v. Parnell*, 386 So. 2d 1137 (Ala. 1980)). "Malice is an inference of fact, and it may be inferred from a lack of probable cause or from mere wantonness or carelessness if the actor, when doing the act, knows it to be wrong or unlawful." *Wal-Mart Stores, Inc. v. Goodman,* 789 So. 2d 166, 174 (Ala. 2000) (citing *Delchamps, Inc. v. Bryant,* 738 So.2d 824, 833 (Ala. 1999)). "However, an inference of malice drawn from the lack of probable cause may be rebutted by evidence showing that the defendant acted in good faith." *Id.* (citing *Bryant*, 738 So.2d at 832).

27. The Court finds sufficient evidence presented that Allums was potentially liable for malicious prosecution. For the reasons explained earlier, the arrest occurred without probable cause. Under the circumstances, the Court finds that Allums knew that his conduct was wrongful, and thus he acted with malice. The evidence that Allums acted in good faith was insufficient to rebut the evidence that Allums acted with malice.

28. The Court finds that Stovall's damages are $25,000 because Stovall suffered embarrassment and mental anguish in the presence of his friends and his young son as a result of the incident.

13

29. Media General must indemnify Allums pursuant to § 6-5-338(c).

30. Stovall shall recover these damages from Media General because Allums assigned his right of indemnification to Stovall.

### III. CONCLUSION

Consistent with this Memorandum Opinion and Order, the Court will enter a written final judgment in favor of Defendant and against Plaintiff.

Furthermore, it is hereby

ORDERED that Plaintiff's Motions for Judgment as a Matter of Law and Defendant's Motion for Judgment as a Matter of Law, all of which were made orally on December 3, 2007, are DENIED.

DONE on this the 11th day of March, 2008.

> /s/ Mark E. Fuller
> CHIEF UNITED STATES DISTRICT JUDGE